The summaries of the Colorado Court of Appeals published opinions constitute no part of the opinion of the division but have been prepared by the division for the convenience of the reader. The summaries may not be cited or relied upon as they are not the official language of the division. Any discrepancy between the language in the summary and in the opinion should be resolved in favor of the language in the opinion.

SUMMARY
May 15, 2025

## 2025COA50

**No. 23CA1576, *People v. Schlehuber* — Criminal Law — Model Jury Instructions — Presumption of Innocence, Burden of Proof, and Reasonable Doubt**

Addressing four challenges to the 2022 Colorado model jury instruction on reasonable doubt, a division of the court of appeals concludes that the instruction does not unconstitutionally lower the burden of proof, violate the presumption of innocence, or shift the burden of proof to the defendant. More specifically, a district court does not err by (1) failing to instruct the jury that reasonable doubt may arise from "the lack of evidence"; (2) omitting the phrase "hesitate to act" from the reasonable doubt definition; (3) defining proof beyond a reasonable doubt as proof that leaves the jury "firmly convinced" of the defendant's guilt; and (4) instructing the jury that the prosecution has failed to meet its burden if the jury thinks "there is a real possibility" that the defendant is not guilty.

COLORADO COURT OF APPEALS 2025COA50

Court of Appeals No. 23CA1576
Mesa County District Court No. 22CR165
Honorable Jeremy L. Chaffin, Judge

The People of the State of Colorado,

Plaintiff-Appellee,

v.

Kyle R. Schlehuber,

Defendant-Appellant.

JUDGMENT AFFIRMED

Division V
Opinion by JUDGE SCHOCK
Lipinsky and Sullivan, JJ., concur

Announced May 15, 2025

Philip J. Weiser, Attorney General, Carmen Moraleda, Senior Assistant
Attorney General, Denver, Colorado, for Plaintiff-Appellee

Megan A. Ring, Colorado State Public Defender, Dilyn K. Myers, Deputy State
Public Defender, Denver, Colorado, for Defendant-Appellant

¶ 1     Defendant, Kyle R. Schlehuber, appeals his conviction for driving while ability impaired (DWAI) (fourth or subsequent offense). He argues that the district court erred by (1) giving the model jury instruction on reasonable doubt then in effect and (2) admitting a record of his prior conviction without redaction. We affirm.

¶ 2     In doing so, we hold that the 2022 Colorado model criminal jury instruction on reasonable doubt does not unconstitutionally lower the prosecution's burden of proof, violate the presumption of innocence, or shift the burden of proof to the defendant.

## I.     Background

¶ 3     While parked at a gas station, Schlehuber was approached by police because his truck matched the description of a truck that had reportedly driven through a fence. The first officer to approach did not smell a strong odor of alcohol on Schlehuber. But the next officer to arrive did. According to the second officer, Schlehuber's breath smelled of alcohol, his eyes were glassy, and his speech was slurred. Schlehuber told the officer he had drunk four beers.

¶ 4     The officer arrested Schlehuber and asked if he would be willing to perform roadside sobriety tests. After initially declining, Schlehuber agreed, failing all three tests he was given. The officer

then drove Schlehuber to a hospital to take a blood test. On the way, Schlehuber told the officer he took several prescription medications that made the effect of alcohol "three times worse."

¶ 5 Once at the hospital, Schlehuber began making marks on the blood test consent form, ostensibly to indicate what other substances were in his system. The officer told him not to write on the form and gave him a piece of scratch paper to write on instead. Schlehuber wrote "fuck" on the signature line of the consent form, which the officer interpreted as a refusal to cooperate with testing. As a result, Schlehuber's blood alcohol content was never tested.

¶ 6 Schlehuber was charged with felony driving under the influence (DUI) (fourth or subsequent offense), based on three prior DUI convictions. A jury found him guilty of the lesser included offense of felony DWAI (fourth or subsequent offense).

## II. Reasonable Doubt Instruction

¶ 7 Schlehuber contends that the district court reversibly erred by giving the 2022 Colorado model criminal jury instruction on reasonable doubt. He asserts that the instruction lowered the prosecution's burden of proof, undercut the presumption of innocence, and shifted the burden of proof to him. We disagree.

## A. Additional Background

¶ 8    Before 2022, the Colorado model criminal jury instruction defined reasonable doubt as follows:

> Reasonable doubt means a doubt based upon reason and common sense which arises from a fair and rational consideration of all of the evidence, or the lack of evidence, in the case. It is a doubt which is not a vague, speculative or imaginary doubt, but such a doubt as would cause reasonable people to hesitate to act in matters of importance to themselves.

COLJI-Crim. E:03 (2021).[1]  That instruction has been approved by Colorado courts.  *See People v. Alvarado-Juarez*, 252 P.3d 1135, 1137 (Colo. App. 2010); *People v. Robb*, 215 P.3d 1253, 1262-63 (Colo. App. 2009); *see also Tibbels v. People*, 2022 CO 1, ¶ 25 (urging courts to adhere to "long-established pattern instructions").

¶ 9    In 2022, the model instruction concerning the presumption of innocence, burden of proof, and reasonable doubt was substantially revised to read, in its entirety, as follows:

> Every person charged with a crime is presumed innocent.  This presumption of

---

[1] The 2021 model instruction also included a paragraph concerning the presumption of innocence that is nearly identical to the first paragraph of the 2022 model instruction and a final paragraph that is similar to the final two paragraphs of the 2022 instruction. *Compare* COLJI-Crim. E:03 (2021) *with* COLJI-Crim. E:03 (2022).

innocence remains with the defendant throughout the trial and should be given effect by you unless, after considering all the evidence, you are convinced that the defendant is guilty beyond a reasonable doubt.

The burden of proof in this case is upon the prosecution. The prosecution must prove to the satisfaction of the jury beyond a reasonable doubt the existence of each and every element necessary to constitute the crime charged. This burden requires more than proof that something is highly probable, but it does not require proof with absolute certainty.

Proof beyond a reasonable doubt is proof that leaves you firmly convinced of the defendant's guilt. If you are firmly convinced of the defendant's guilt, then the prosecution has proven the crime charged beyond a reasonable doubt. But if you think there is a real possibility that the defendant is not guilty, then the prosecution has failed to prove the crime charged beyond a reasonable doubt.

After considering all the evidence, if you decide the prosecution has proven each of the elements of a crime charged beyond a reasonable doubt, you should find the defendant guilty of that crime.

After considering all the evidence, if you decide the prosecution has failed to prove any one or more of the elements of a crime charged beyond a reasonable doubt, you should find the defendant not guilty of that crime.

COLJI-Crim. E:03 (2022).

¶ 10    The district court in this case gave the 2022 version of the instruction verbatim (except that it substituted Schlehuber's name for "the defendant").  Schlehuber objected, noting that the new model instruction had not been approved by any court.  He argued that it lowered the reasonable doubt standard, undermined the presumption of innocence, and shifted the burden of proof to the defense.  More specifically, he took issue with the "firmly convinced" and "real possibility" phrases, contending that these phrases could cause confusion and set the bar for reasonable doubt too high.  Schlehuber proposed a different instruction based on model jury instructions from other states or, alternatively, requested that the court use the prior version of the Colorado model instruction.

¶ 11    The district court denied Schlehuber's request.  It explained that the pertinent language in the 2022 model instruction had been approved by federal courts and quoted with approval by Justice Ginsburg in her partial concurrence in *Victor v. Nebraska,* 511 U.S. 1, 27 (1994) (Ginsburg, J., concurring in part and concurring in the judgment).  The court also concluded that the 2022 model instruction "presents the concept of reasonable doubt . . . in a more succinct and understandable fashion" than the prior version.

### B. Applicable Law and Standard of Review

¶ 12    The United States Constitution "protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *In re Winship*, 397 U.S. 358, 364 (1970).  The reasonable doubt standard gives "concrete substance" to the presumption of innocence afforded all defendants.  *Tibbels*, ¶ 24 (quoting *Winship*, 397 U.S. at 363); *see also Perez v. People*, 2013 CO 22, ¶ 16 ("The presumption of innocence . . . is a basic component of a fair trial . . . ." (quoting *Estelle v. Williams*, 425 U.S. 501, 503 (1976))).

¶ 13    The district court must properly instruct the jury on the reasonable doubt standard.  *Tibbels*, ¶ 25.  Although the court has some flexibility in how it defines reasonable doubt, an instruction that lowers the prosecution's burden of proof below the reasonable doubt standard is structural error requiring automatic reversal.  *Id.* at ¶¶ 22, 25.  To determine whether an instruction impermissibly lowered the burden of proof, we apply a "functional test, asking whether there is a reasonable likelihood that the jury understood [the] contested instruction, in the context of the instructions as a

whole and the trial record, to allow a conviction based on a standard lower than beyond a reasonable doubt." *Id.* at ¶ 36.

¶ 14　Model jury instructions are "intended as guidelines and should be considered by trial courts." *People v. Morales*, 2014 COA 129, ¶ 42; *see also Galvan v. People*, 2020 CO 82, ¶ 38 (noting that model instructions "serve as beacon lights to guide trial courts"). But they are not binding and they are not the law. *Krueger v. Ary*, 205 P.3d 1150, 1154 (Colo. 2009); *People v. Randolph*, 2023 COA 7, ¶ 22 (*cert. granted* Sept. 25, 2023). Nor does adherence to a model instruction provide a "safe harbor that insulates instructional error from reversal." *Garcia v. People*, 2019 CO 64, ¶ 22. Instead, we review such an instruction as we would any other. *See id.* at ¶ 23.

¶ 15　We review de novo whether a jury instruction impermissibly lowered the prosecution's burden of proof. *Tibbels*, ¶ 22. But as long as the instructions properly inform the jury of the law, the district court has broad discretion to determine their form and style. *McDonald v. People*, 2021 CO 64, ¶ 54. Thus, if the instructions as a whole correctly inform the jury of the prosecution's burden of proof beyond a reasonable doubt, there is no due process violation. *Johnson v. People*, 2019 CO 17, ¶ 14.

C. Analysis

¶ 16 Schlehuber challenges four aspects of the 2022 model jury instruction, as given by the district court: (1) its failure to direct the jury that it could consider the "lack of evidence"; (2) its omission of the "hesitate to act" phrase that was in the previous model instruction; (3) its equating reasonable doubt with "a real possibility that the defendant is not guilty"; and (4) its use of the phrase "firmly convinced" to define proof beyond a reasonable doubt.

¶ 17 He argues that these errors, individually and collectively, unconstitutionally lowered the prosecution's burden of proof to something less than beyond a reasonable doubt. Although Schlehuber did not raise his first two arguments in the district court, we consider all four claims of error because if they lowered the burden of proof, they would amount to structural error. *See Tibbels*, ¶ 22; *Stackhouse v. People*, 2015 CO 48, ¶ 10 n.3 (noting that even forfeited structural error requires automatic reversal).

## 1. Lack of Evidence

¶ 18 The previous version of the model jury instruction provided that reasonable doubt could arise from "consideration of all of the evidence, *or the lack of evidence*, in the case." COLJI-Crim. E:03

(2021) (emphasis added).  The 2022 model instruction removed this sentence and, with it, any reference to the "lack of evidence." COLJI-Crim. E:03 (2022).[2]  Like the previous version, the 2022 instruction continues to provide that the defendant is presumed innocent "unless, after considering all the evidence, you are convinced that the defendant is guilty beyond a reasonable doubt." *Id.*; *see also* COLJI-Crim. E:03 (2021).  Schlehuber maintains that the omission of the "lack of evidence" language undermined the reasonable doubt standard by diminishing the significance of "holes" in the prosecution's case and shifting the burden to the defense to identify evidence establishing a reasonable doubt.

¶ 19     In an opinion issued today, another division of this court has rejected this argument.  *See People v. Melara*, 2025 COA 48, ¶ 24. The *Melara* division concluded that a district court "should inform the jury, as part of the reasonable doubt instruction, that it may consider the lack of evidence in the case."  *Id.*  But despite that

---

[2] In 2023, the Model Criminal Jury Instructions Committee, without explanation, reinserted the reference to the "lack of evidence" into the definition of reasonable doubt by adding a new sentence that reads, "A reasonable doubt can be based on the evidence presented or the lack of evidence presented."  COLJI-Crim. E:03 (2023).

admonition, the division held that the omission of that phrase did not impermissibly lower the prosecution's burden of proof in that case. *Id.* We agree with *Melara* that the omission of this phrase from the reasonable doubt instruction is not structural error.

¶ 20    But in doing so, we depart from *Melara* in one respect. Although we agree with *Melara* that it might be better for a district court to instruct the jury that it may consider the lack of evidence, we disagree with *Melara*'s direction that a court "should" do so — at least to the extent that direction implies any legal deficiency in an instruction without such language. *Id.* at ¶ 28. To the contrary, we hold expressly that a court does not err by omitting that language.[3]

¶ 21    As the *Melara* division recognizes, "the absence of an express instruction to consider the lack of evidence is not tantamount to a prohibition on doing so." *Id.* at ¶ 32. And as other courts have

---

[3] At least six federal courts of appeals have held that a court does not err by omitting an explicit reference to the lack of evidence from a jury instruction defining reasonable doubt. *See United States v. Petty*, 856 F.3d 1306, 1311 (10th Cir. 2017); *United States v. Jacques*, 266 F. App'x 824, 828 (11th Cir. 2008); *United States v. Rogers*, 91 F.3d 53, 57 (8th Cir. 1996); *Leecan v. Lopes*, 893 F.2d 1434, 1443 (2d Cir. 1990); *United States v. Baskin*, 886 F.2d 383, 388 (D.C. Cir. 1989); *Rault v. Louisiana*, 772 F.2d 117, 137 (5th Cir. 1985). We are not aware of any case that has held to the contrary.

pointed out in upholding instructions that do not refer to the lack of evidence, the concept of reasonable doubt inherently invites jurors to consider what evidence is missing. *See United States v. Rogers*, 91 F.3d 53, 56-57 (8th Cir. 1996) ("That a lack of evidence may cause one to have a reasonable doubt is self-evident."); *see also United States v. Petty*, 856 F.3d 1306, 1311 (10th Cir. 2017).

¶ 22     We also agree with the People that this conclusion is bolstered by reading the instruction as a whole, which informs the jury that (1) the prosecution bears the burden of proof; (2) Schlehuber is presumed innocent unless the prosecution meets its burden; and (3) in making that determination, the jury must consider "all the evidence." Necessarily, that means that if the prosecution fails to present sufficient evidence of guilt, it will not have met its burden. *See Petty*, 856 F.3d at 1311; *see also Rault v. Louisiana*, 772 F.2d 117, 137 (5th Cir. 1985) ("These instructions necessarily conveyed the concept that a reasonable doubt would arise in the absence of evidence sufficient to show guilt beyond a reasonable doubt.").

¶ 23     Indeed, although the prior version of the model instruction referred to "the lack of evidence" in defining reasonable doubt, other portions of the instruction did not. Instead, like the 2022 model

instruction, the prior version directed the jury to determine whether the defendant was guilty beyond a reasonable doubt "after considering all the evidence." COLJI-Crim. E:03 (2021). And it instructed the jury that it should find the defendant guilty or not guilty based on whether it did or did not find "from the evidence" that the prosecution had proved each element of the crime beyond a reasonable doubt. *Id.*; *see also Robb*, 215 P.3d at 1262.

¶ 24 Schlehuber points out that both the United States Supreme Court and divisions of this court have approved reasonable doubt instructions that refer expressly to consideration of the "lack of evidence." *See Johnson v. Louisiana*, 406 U.S. 356, 360 (1972), *abrogated on other grounds by Ramos v. Louisiana*, 590 U.S. 832 (2020); *Robb*, 215 P.3d at 1262. But that does not mean the converse is true — that it is error *not* to include that phrase. And a district court "is not obligated to give any jury instruction submitted by the defendant simply because it correctly states the law." *People v. Sanders*, 2022 COA 47, ¶ 35, *aff'd on other grounds*, 2024 CO 33.

¶ 25 Thus, we stop short of *Melara*'s direction about what district courts "should" do going forward. A district court's obligation is to correctly inform the jury of the prosecution's burden of proof

12

beyond a reasonable doubt.  *See Tibbels*, ¶ 25.  And on that issue, we converge with *Melara*: the omission of the "lack of evidence" language did not unconstitutionally lower the prosecution's burden of proof below the reasonable doubt standard because there is no reasonable likelihood the jury understood it to do so.  *Melara*, ¶ 32.

## 2. Hesitate to Act

¶ 26    The United States Supreme Court and Colorado courts have upheld — over challenges from criminal defendants — jury instructions that define reasonable doubt as a doubt that would cause a reasonable person to "hesitate to act."  *See Victor*, 511 U.S. at 20; *Alvarado-Juarez*, 252 P.3d at 1137; *Robb*, 215 P.3d at 1263.

¶ 27    But that formulation of reasonable doubt has not come without criticism.  Most notably, in her partial concurrence in *Victor*, Justice Ginsburg called the "hesitation to act" analogy "misplaced" because many of the most important decisions people make in their lives come with a "very heavy element of uncertainty" and are "unlike the decisions jurors ought to make in criminal cases."  511 U.S. at 24-25 (Ginsburg, J., concurring in part and concurring in the judgment) (citation omitted).  That criticism, in part, is what prompted the Model Criminal Jury Instructions

Committee to remove the "hesitate to act" phrase from the model jury instruction. *See* COLJI-Crim. E:03 cmt. 1 (2024).

¶ 28 Schlehuber now argues that the *removal* of this oft challenged language improperly lowered the burden of proof. But other than pointing out that courts have previously approved this language, he does not say why it is error *not* to include it. And we do not see why it would be, so long as the instruction otherwise correctly defines the reasonable doubt standard. *See United States v. O'Brien*, 972 F.2d 12, 16 (1st Cir. 1992) (rejecting argument that a court "*must* use the 'hesitate to act' language when defining reasonable doubt"); *United States v. Velasquez*, 980 F.2d 1275, 1278 (9th Cir. 1992) (noting that while cases have approved of the "hesitate to act" language, "failure to use that language does not necessarily constitute reversible error"). To reiterate the point we make above, just because a proposed instruction is a correct statement of the law does not mean the instruction must be given or that it is the *only* correct way to articulate the applicable law. *Sanders*, ¶ 35.

### 3. Firmly Convinced and Real Possibility

¶ 29 Schlehuber next turns from what the instruction did *not* say about the reasonable doubt standard to what it *did* say. He argues

that the instruction erroneously defined (1) reasonable doubt as a "real possibility that Mr. Schlehuber is not guilty" and (2) proof beyond a reasonable doubt as proof that leaves you "firmly convinced" of the defendant's guilt.  Because these two challenged phrases are two sides of the same coin, we address them together.

¶ 30    To start, this juxtaposition — between believing there is a "real possibility" the defendant is not guilty, on one hand, and being "firmly convinced" of the defendant's guilt, on the other — has been consistently approved by federal courts as an accurate expression of the reasonable doubt standard.  *See, e.g., Petty*, 856 F.3d at 1310; *United States v. Williams*, 20 F.3d 125, 131-32 (5th Cir. 1994); *United States v. Taylor*, 997 F.2d 1551, 1557-58 (D.C. Cir. 1993); *see also Victor*, 511 U.S. at 24-25 (Ginsburg, J., concurring in part and concurring in the judgment) (endorsing a similar definition as "surpass[ing] others . . . in stating the reasonable

doubt standard succinctly and comprehensibly").[4]  So has the

"firmly convinced" language alone.  *See Harris v. Bowersox*, 184

F.3d 744, 751-52 (8th Cir. 1999); *United States v. Brand*, 80 F.3d

560, 566 (1st Cir. 1996).  And in *Melara*, the division approved of

both phrases as "an accurate statement of the law."  *Melara*, ¶ 30.

¶ 31     We agree with this weight of authority.  The phrase "firmly

convinced" correctly connotes a standard of "near certitude,"

*Jackson v. Virginia*, 443 U.S. 307, 315 (1979) — one that is higher

than "highly probable" but stops short of absolute certainty.  *See*

*People v. Camarigg*, 2017 COA 115M, ¶ 49 (noting distinction

between "proof beyond a reasonable doubt and proof beyond all

doubt").  And the phrase "real possibility" correctly directs the jury

not to acquit the defendant simply because it can conceive of *some*

fanciful possibility that the defendant is not guilty.  *Williams*, 20

F.3d at 131; *see also Victor*, 511 U.S. at 17 (approving of instruction

---

[4] Schlehuber cites two federal cases that disapproved of the "real possibility" language in a reasonable doubt jury instruction, neither of which held that the inclusion of that phrase was reversible error. *See United States v. Porter*, 821 F.2d 968, 973 (4th Cir. 1987); *United States v. McBride*, 786 F.2d 45, 52 (2d Cir. 1986).  Both cases predated Justice Ginsburg's concurrence in *Victor v. Nebraska* endorsing such an instruction.  *See* 511 U.S. 1, 27 (1994) (Ginsburg, J., concurring in part and concurring in the judgment).

16

that a reasonable doubt is "not a mere possible doubt" because everything "is open to some possible or imaginary doubt").

¶ 32 Relying on a Hawaii case, Schlehuber contends that "firmly convinced" is more akin to the lesser standard of clear and convincing evidence than to proof beyond a reasonable doubt. *See State v. Perez*, 976 P.2d 427, 442-43 (Haw. Ct. App. 1998)*, aff'd in part and rev'd in part on other grounds*, 976 P.2d 379 (Haw. 1999). We disagree. Clear and convincing evidence is "evidence that is highly probable and free from serious or substantial doubt." *Destination Maternity v. Burren*, 2020 CO 41, ¶ 10 (citation omitted). The model instruction used in this case says that proof beyond a reasonable doubt "requires *more* than proof that something is highly probable." COLJI-Crim. E:03 (2022) (emphasis added). And it requires the prosecution to dispel any "real possibility" the defendant is not guilty, not just a serious or substantial one. *Id.*

¶ 33 We also reject Schlehuber's argument that the two challenged phrases are "contradictory" or "create two different standards." Rather, the phrases work together to give the jury a complete picture of the reasonable doubt standard. The first — "firmly convinced" — describes what it means to have no reasonable doubt.

17

The second — "real possibility" — contrasts that with what it means to have a reasonable doubt. In other words, the jury could either be "firmly convinced" of Schlehuber's guilt (and find him guilty) or "think there is a real possibility" that Schlehuber was not guilty (and find him not guilty). Both things could not be true.

¶ 34     Nor does equating reasonable doubt with a "real possibility" shift the burden to the defendant to establish that real possibility. Nothing in that phrase suggests that the defendant must be "the source of the 'real possibility.'" *Taylor*, 997 F.2d at 1557. To the contrary, the district court repeatedly instructed the jury that the prosecution bears the burden of proving each element of the crime beyond a reasonable doubt. The "real possibility" language simply explained the threshold the prosecution must overcome to do so.

4.     Cumulative Effect

¶ 35     Finally, Schlehuber contends that even if none of the putative errors he identifies individually lowered or shifted the burden of proof or undercut his presumption of innocence, their cumulative effect was to do so. We disagree. Considering the instruction in its entirety and "in the context of the instructions as a whole and the trial record," we conclude that there is no reasonable likelihood that

18

a jury would understand the 2022 model jury instruction, as given by the district court in this case, "to allow a conviction based on a standard lower than beyond a reasonable doubt." *Tibbels*, ¶ 36.

### III.    Record of Prior Conviction

¶ 36     Schlehuber next argues that the district court reversibly erred by admitting portions of the record of one of his prior convictions that referred to other criminal charges and probation violations.  He asserts that this information was irrelevant and unduly prejudicial and should have been excluded under CRE 403 and CRE 404(b).[5] Although we agree that certain portions of the record should not have been admitted, we conclude that any error was harmless.

### A.    Additional Background

¶ 37     To prove Schlehuber had three or more prior qualifying convictions, the prosecution introduced certified records of a 2013

---

[5] Schlehuber cites the constitutional right to a fair trial by an impartial jury.  *See Howard-Walker v. People*, 2019 CO 69, ¶ 23. But he does not develop any constitutional argument, so we decline to address one.  *See People v. Leverton*, 2017 COA 34, ¶ 65.  Not every evidentiary error rises to the level of constitutional error.  *See People v. Dominguez-Castor*, 2020 COA 1, ¶ 70; *see also Yusem v. People*, 210 P.3d 458, 469 n.16 (Colo. 2009) ("Erroneous admission of CRE 404(b) evidence is not error of constitutional dimension.").

19

Nebraska conviction and two Colorado convictions in 2020 and 2021. Only the Nebraska conviction record is at issue on appeal.

¶ 38 The fourteen-page record of the Nebraska conviction included:

- a criminal complaint charging Schlehuber with DUI (second offense), driving during suspension, and failure to yield the right-of-way;

- a plea of not guilty;

- a court order indicating that Schlehuber pleaded guilty to DUI (second offense) and was sentenced to probation;

- an order of probation indicating the terms of the probation, including license revocation, attendance at Alcoholics Anonymous meetings, outpatient treatment, and alcohol abstention;

- an affidavit of probation violation and motion for revocation;

- a memorandum from the probation office alleging several probation violations, including a new charge of driving under revocation, failing to disclose pending sentences in another county, failing to comply with court orders (resulting in an active arrest warrant), failing to attend

Alcoholics Anonymous meetings, and failing to complete outpatient treatment;

- a memorandum from the prosecutor indicating an intent to file the probation violation and seek a warrant; and
- an order revoking Schlehuber's probation and sentencing him to jail for thirty days.

¶ 39　Schlehuber objected to the admission of the Nebraska record. Initially, he asserted that the entire document was irrelevant because it did not indicate the existence of a conviction. When the court ruled there was a sufficient foundation to show the record was more likely than not a judgment of conviction, Schlehuber turned his focus to portions of the record that went beyond the conviction. He argued that much of the record was irrelevant and inadmissible under CRE 403 because it "list[ed] literally everything else that ha[d] happened in the case," including everything he had been charged with. He specifically objected to the portion of the record that mentioned his probation violation and revocation.

¶ 40　The district court overruled the objection and admitted the record in its entirety. Given Schlehuber's suggestion that the record did not clearly establish a conviction, the court concluded

21

that the jury should be entitled to review the entire document "to determine whether or not there is in fact a prior qualifying conviction." It ruled that the probation violation was relevant to that question because probation necessarily suggests there has been a conviction. The court also concluded that a limiting instruction would adequately address any danger of unfair prejudice by directing the jury that it could consider the record only for determining whether or not there was a prior qualifying offense.

¶ 41    The district court then gave the jury the following limiting instruction:

> [Y]ou're about to hear evidence regarding Mr. Schlehuber's alleged prior convictions. You may only consider this evidence to decide whether the prosecution has proved beyond a reasonable doubt that Mr. Schlehuber has three or more prior qualifying convictions. You may not consider this evidence for any other purpose.

The court gave a similar limiting instruction after Schlehuber testified about the prior convictions and at the end of trial.

### B.    Standard of Review and Applicable Law

¶ 42    The district court has broad discretion to determine the admissibility of evidence based on its relevance, probative value,

22

and prejudicial impact. *People v. Elmarr*, 2015 CO 53, ¶ 20. We review evidentiary rulings for an abuse of discretion. *People v. Owens*, 2024 CO 10, ¶ 105. A district court abuses its discretion when its ruling is manifestly arbitrary, unreasonable, or unfair or when it is based on an incorrect understanding of the law. *Id.*

¶ 43 Evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." CRE 401. Irrelevant evidence is inadmissible. CRE 402. Relevant evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice. CRE 403. In reviewing whether evidence should have been excluded under CRE 403, we afford the evidence its maximum reasonable probative value and the minimum unfair prejudice that might reasonably be expected. *People v. Acosta*, 2014 COA 82, ¶ 58.

¶ 44 Evidence of other crimes or acts is not admissible "to prove a person's character in order to show that on a particular occasion the person acted in conformity with the character." CRE 404(b)(1). But such evidence is admissible for "almost any non-propensity purpose." *Rojas v. People*, 2022 CO 8, ¶ 28; *see also* CRE 404(b)(2).

Thus, evidence of extrinsic acts that are suggestive of bad character is admissible if it is (1) logically relevant (2) to a material fact (3) independent of the prohibited inference of the defendant's bad character, and (4) its probative value is not substantially outweighed by the risk of unfair prejudice. *Rojas*, ¶¶ 27, 52.

¶ 45 When an evidentiary objection is preserved, we review the erroneous admission of evidence for harmless error. *People v. Hines*, 2021 COA 45, ¶ 40. Under this standard, we will reverse if there is a "reasonable probability" that the error contributed to the defendant's conviction. *People v. Vanderpauye*, 2023 CO 42, ¶ 66.

¶ 46 We review unpreserved evidentiary claims for plain error, meaning we will reverse only if the error was "obvious, substantial, and 'so undermined the fundamental fairness of the trial itself as to cast serious doubt on the reliability of the judgment of conviction.'" *People v. Snelling*, 2022 COA 116M, ¶ 33 (citation omitted).

### C.    CRE 403

¶ 47 The record of the Nebraska conviction itself was relevant and admissible to prove the fact of Schlehuber's prior DUI conviction — an element of the charged offense — and Schlehuber does not contend otherwise. *See People v. Kembel*, 2023 CO 5, ¶ 53. But

24

that does not mean the entire fourteen-page record should have been admitted wholesale. *See Carter v. People*, 2017 CO 59M, ¶ 24 (noting that if an admissible recording "contains evidence of uncharged crimes or otherwise inadmissible evidence, it must of course be redacted before being admitted into evidence"); *Martin v. People*, 738 P.2d 789, 795 (Colo. 1987) (holding that where the defendant's confinement was relevant but the nature of his offense was not, the district court "should have admitted the mittimus with the prejudicial information excised"). It is the portions of the record that go beyond the fact of Schlehuber's conviction that are at issue.

¶ 48     Given Schlehuber's argument that the proffered exhibit did not show a qualifying conviction, we agree with the district court that certain portions of the exhibit beyond the record of conviction itself were at least minimally relevant. For example, the criminal complaint showed Schlehuber was charged with DUI; the order of probation identified the charge for which probation was imposed as DUI; the affidavit of probation violation stated that Schlehuber was found guilty of DUI; and the probation violation allegations and revocation order both identified the charge as DUI. All this evidence made it more probable that Schlehuber had in fact been convicted

of DUI in that case. *See People v. Morales*, 2012 COA 2, ¶ 9 ("The prosecution is generally entitled to prove the elements of its case against a defendant by evidence of its own choice . . . .").

¶ 49 We note that Schlehuber was incorrect in arguing that the exhibit did not include the record of conviction. The court order in the exhibit stated that Schlehuber had pleaded guilty to DUI, was found guilty of DUI, and was sentenced to probation as a result. This direct evidence of the prior conviction reduces the "'marginal' or 'incremental' probative value" of the other portions of the exhibit. *People v. Williams*, 2020 CO 78, ¶ 14. But to the extent Schlehuber's initial objection caused the court to overstate the significance of these other documents, Schlehuber invited any such error by asserting that the record did not otherwise show a conviction. *See People v. Rediger*, 2018 CO 32, ¶ 34 ("The doctrine of invited error prevents a party from complaining on appeal of an error that he or she has invited or injected into the case . . . .").

¶ 50 Nevertheless, we agree with Schlehuber that certain portions of the record were not relevant. Among other things, those portions included other (non-DUI) charges that had been dismissed, multiple alleged probation violations, a subsequent charge of driving under

26

revocation, a reference to pending sentences in another county and an active arrest warrant, a reference to probation violations in another case, and a probation officer's comment that Schlehuber "has received multiple opportunities to engage in rehabilitative efforts" but "continues to demonstrate an inability to appropriately adopt a more conventional lifestyle and avoid legal conflicts."  None of this evidence made it more or less probable that Schlehuber had been convicted of DUI in the Nebraska case.  *See* CRE 401.

¶ 51     Moreover, even if this evidence had some minimal probative value, any such value was substantially outweighed by the danger of unfair prejudice.  CRE 403.  Together, this evidence showed a pattern of Schlehuber's failure to comply with the law and, in particular, his struggles with alcohol.  *Cf. People v. Hamilton*, 2019 COA 101, ¶ 95 ("Evidence of a prior criminal conviction is generally inadmissible because of its highly prejudicial effect.").  In a case that turned on whether Schlehuber was under the influence of or impaired by alcohol, the risk that the jury might improperly take into account his prior alcohol-related issues was high.  Thus, even giving the evidence its maximum reasonable probative value and its

minimum reasonable unfairly prejudicial effect, the district court abused its discretion by admitting the record in its entirety.

¶ 52 We nonetheless conclude that this error was harmless for three reasons. First, the jury properly heard evidence that Schlehuber had three prior DUI convictions — including Schlehuber's testimony that he "pleaded guilty [to each] because [he] did it." Those convictions themselves informed the jury that Schlehuber had a history of alcohol-related convictions that was at least as prejudicial as the acts described in the Nebraska record. *See People v. Carian*, 2017 COA 106, ¶ 44 (holding that prior drug offense "likely had minimal impact on the jury" when the jury was already informed that the defendant had issues related to drugs). Notably, the prosecution never mentioned any information contained in the Nebraska record other than the DUI conviction.

¶ 53 Second, while the Nebraska record concerned Schlehuber's conduct in 2013 and 2014, Schlehuber's other two DUI convictions were from 2020 and 2021. These more recent convictions were more indicative of his continued criminal conduct and problems with alcohol at the time of the charged offense than his probation violations and non-alcohol-related offenses nearly a decade earlier.

¶ 54    Third, the district court instructed the jury — both immediately after the Nebraska record was admitted and in its final instructions — that it could only consider the evidence to decide whether the prosecution had proved beyond a reasonable doubt that Schlehuber had three or more prior qualifying convictions. *See id.* at ¶ 45 (holding that error in admission of prior offense was harmless where the court's limiting instruction "mitigated any potential prejudice that may have flowed from the admission of the challenged evidence"). Although we do not go so far as to conclude that such an instruction alone will always make the erroneous admission of such evidence harmless, we generally presume that a jury follows the district court's instructions. *Id.*; *see also Kembel*, ¶ 49 (noting that the potential prejudice to a defendant "can be largely neutralized through limiting jury instructions").

¶ 55    Thus, although we agree with Schlehuber that the Nebraska record contained extraneous information that should have been redacted or otherwise excluded, we conclude that there is no reasonable probability that the admission of that information contributed to Schlehuber's conviction. *See Vanderpauye*, ¶ 66.

## D. CRE 404(b)

¶ 56 Schlehuber also contends that the admission of the Nebraska record violated CRE 404(b) because it contained extrinsic evidence of other acts. He did not object on this ground in the district court. Rather, his counsel cited only "relevance, [CRE] 403, hearsay, and . . . lack of foundation." Given these stated bases for the objection, counsel's reference to "everything that Mr. Schlehuber was charged with" was not sufficiently specific to alert the district court to a CRE 404(b) issue. *See People v. Ujaama,* 2012 COA 36, ¶ 37. We therefore review this contention for plain error. *Id.* at ¶ 38.

¶ 57 Much of the CRE 404(b) analysis dovetails with the analysis above. To the extent the Nebraska record was offered to prove the fact of Schlehuber's prior DUI conviction, it was intrinsic to the charged offense, and its relevance was independent of any inference about Schlehuber's character. *See Rojas,* ¶¶ 27, 52. To the extent the record included evidence of other acts beyond the prior DUI

conviction, that evidence was extrinsic and was not "logically relevant . . . to [any] material fact." *Id.* at ¶¶ 27, 52.[6]

¶ 58   But even assuming the admission of such evidence was obvious error under CRE 404(b), it does not constitute plain error for the reasons above. Because there is no reasonable probability that the improperly admitted evidence contributed to Schlehuber's conviction, it did not undermine the fundamental fairness of the trial or cast serious doubt on the reliability of the conviction. *See Hagos v. People*, 2012 CO 63, ¶ 14 ("[T]he error must impair the reliability of the judgment of conviction to a greater degree [under plain error] than under harmless error to warrant reversal.").

IV.   Disposition

¶ 59   The judgment is affirmed.

JUDGE LIPINSKY and JUDGE SULLIVAN concur.

---

[6] We reject the People's attempt to avoid CRE 404(b) by arguing that the other acts referenced in the Nebraska record were intrinsic to the Nebraska DUI. The question is whether the acts are intrinsic or extrinsic to the *charged offense. Rojas v. People*, 2022 CO 8, ¶ 52.