23CA0608 Peo v Wilson 09-25-2025

COLORADO COURT OF APPEALS

---

Court of Appeals No. 23CA0608
City and County of Denver District Court No. 22CR3036
Honorable Darryl F. Shockley, Judge

---

The People of the State of Colorado,

Plaintiff-Appellee,

v.

Donavon B. Wilson,

Defendant-Appellant.

---

JUDGMENT AFFIRMED

Division I
Opinion by JUDGE J. JONES
Grove, J., concurs
Schutz, J., specially concurs

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced September 25, 2025

---

Philip J. Weiser, Attorney General, Jaycey DeHoyos, Assistant Attorney General, Denver, Colorado, for Plaintiff-Appellee

Tanja Heggins, Alternate Defense Counsel, Denver, Colorado, for Defendant-Appellant

¶ 1     Defendant, Donavon B. Wilson, appeals the district court's judgment of conviction entered on a jury's verdict finding him guilty of first degree trespass of an inhabited dwelling.  The only contention he raises on appeal is that the court erred by giving the jury a reasonable doubt instruction that, in his view, lowered the prosecution's burden of proof and diminished the presumption of innocence.  That error, he says, amounted to structural error requiring reversal of his conviction.  We reject Wilson's contention and therefore affirm.

I.     Background

¶ 2     Wilson's trial took place in early 2023.  At the jury instruction conference, the court said it intended to use the model reasonable doubt instruction "just released Friday by the [Colorado Supreme Court's Model Criminal Jury Instructions] Committee."  Defense counsel objected, arguing that the revised model instruction's language was problematic for several reasons.  Defense counsel urged the court to instead use the model instruction that had previously been used for decades or, in the alternative, to modify

the language of the new model instruction.  The court chose to use the 2022 modified version of the instruction.[1]

## II.    Analysis

¶ 3      Before 2022, the relevant Colorado model jury instruction defined reasonable doubt as follows:

> Reasonable doubt means a doubt based upon reason and common sense which arises from a fair and rational consideration of all of the evidence, or the lack of evidence, in the case. It is a doubt which is not a vague, speculative or imaginary doubt, but such a doubt as would cause reasonable people to hesitate to act in matters of importance to themselves.

COLJI-Crim. E:03 (2021).  But in 2022, the instruction was substantially revised.  It became part of a combined instruction on the presumption of innocence, the prosecution's burden of proof, and the meaning of reasonable doubt.  And the language defining reasonable doubt differs in several respects from that in the

---

[1] In his reply brief, Wilson says the court intended to use the 2023 modified version of the instruction rather than the 2022 modified version.  But the record belies that assertion.  The 2023 version merely reincorporated language (in one sentence) from the pre-2022 instruction that had been omitted from the 2022 version.  The court and counsel discussed the version omitting that language — the 2022 version.  And it was the 2022 version that the court gave the jury.

previous model instruction.  The 2022 modified version reads as

follows:

> Every person charged with a crime is presumed innocent.  This presumption of innocence remains with the defendant throughout the trial and should be given effect by you unless, after considering all the evidence, you are convinced that the defendant is guilty beyond a reasonable doubt.
>
> The burden of proof in this case is upon the prosecution.  The prosecution must prove to the satisfaction of the jury beyond a reasonable doubt the existence of each and every element necessary to constitute the crime charged.  This burden requires more than proof that something is highly probable, but it does not require proof with absolute certainty.
>
> Proof beyond a reasonable doubt is proof that leaves you firmly convinced of the defendant's guilt.  If you are firmly convinced of the defendant's guilt, then the prosecution has proven the crime charged beyond a reasonable doubt.  But if you think there is a real possibility that the defendant is not guilty, then the prosecution has failed to prove the crime charged beyond a reasonable doubt.
>
> After considering all the evidence, if you decide the prosecution has proven each of the elements of a crime charged beyond a reasonable doubt, you should find the defendant guilty of that crime.
>
> After considering all the evidence, if you decide the prosecution has failed to prove any one or

more of the elements of a crime charged
beyond a reasonable doubt, you should find
the defendant not guilty of that crime.

COLJI-Crim. E:03 (2022).

¶ 4     The district court in this case gave this 2022 version to the jury verbatim.

¶ 5     Wilson contends that this instruction was constitutionally defective in two ways.  First, by failing to include language that a reasonable doubt can be based on the lack of evidence presented, the instruction could have led the jurors to believe they couldn't consider the lack of evidence, thereby lowering the prosecution's burden of proof.  Second, the "real possibility" language was unclear and could have led jurors to apply differing levels of the required proof to support a conviction.

¶ 6     In *People v. Schlehuber*, 2025 COA 50, a division of this court thoroughly considered materially identical arguments and held that the 2022 modified version of the reasonable doubt instruction doesn't lower the prosecution's burden of proof or undermine the presumption of innocence.  *See also People v. Melara*, 2025 COA 48, ¶¶ 24-32 (holding that the court should include "lack of evidence"

language in the instruction but that the failure to do so isn't structural error).[2]

¶ 7　　Though Wilson urges us not to follow *Schlehuber,* we conclude that it is well reasoned and therefore follow it.

### III.　Disposition

The judgment of conviction is affirmed.

JUDGE GROVE concurs.

JUDGE SCHUTZ specially concurs.

---

[2] Wilson argues only that the defects he asserts render the court's giving of the instruction structural error.  He doesn't make any argument in the alternative that these supposed defects amount to any lesser form of error.

JUDGE SCHUTZ, specially concurring.

¶ 8    I concur with my colleagues' conclusion that the trial court's combined burden of proof/presumption of innocence instruction (disputed instruction) did not lower the prosecution's burden of proof or undermine the presumption of innocence.  I write separately, however, to emphasize a few points.

## I.    Lack of Evidence

¶ 9    As the majority notes, the disputed instruction tracked the 2022 combined reasonable doubt/presumption of innocence instruction (2022 model instruction), rather than the 2023 combined reasonable doubt/presumption of innocence instruction (2023 model instruction).  Even though this case was tried in February of 2023, the issues presented in the appeal do not require us to decide whether a trial court would err by giving the 2022 model instruction after the publication of the 2023 model instruction.

¶ 10    The 2022 model instruction was prepared by the Model Criminal Jury Instructions Committee of the Colorado Supreme Court (committee).  It is located and archived electronically in a publication titled "Colorado Jury Instructions Criminal 2022."  *See*

6

COLJI-Crim. (2022).  This version of the combined reasonable doubt/presumption of innocence instruction is often referred to as the "2022 model instruction," "2022 modified version," or something similar.  *See supra* ¶ 2; *People v. Schlehuber,* 2025 COA 50, ¶ 18; *People v. Melara,* 2025 COA 48, ¶ 30.

¶ 11    The committee modified the 2022 model instruction again in the 2023 edition by adding the following sentence at the end of the first paragraph: "A reasonable doubt can be based on the evidence presented or the lack of evidence presented."  COLJI-Crim. E:03 (2023).  Although the committee did not provide an explanation for this addition, it was apparently intended to address the immediate and frequent challenges to the committee's unexplained omission of the "lack of evidence" language from the 2022 model instruction.

¶ 12    Given this complicated procedural history, and the associated naming conventions, it is easy to assume that the 2022 model instruction was publicly available in 2022, and that the 2023 model instruction was publicly available in January of 2023.  Reflecting these uncertainties in his reply brief, Wilson argues that the "trial court clearly intended to utilize the 2023 model . . . instruction[]."

¶ 13    But that is not possible.  The 2022 model instruction was not published until January 27, 2023, three days prior to the start of the trial in this case.  *See* Colo. Jud. Branch, *Colorado Supreme Court Model Criminal Jury Instructions Committee Revises "Reasonable Doubt" Instruction in Annual Update* (Jan. 27, 2023), https://perma.cc/2CQL-T6M4.  And, the committee did not approve the 2023 model instruction until October 27, 2023, well after this trial.  *See* Colo. Jud. Branch, Model Crim. Jury Instructions Comm., *Meeting Minutes of: Friday, October 27, 2023*, https://perma.cc/J67Z-G86M.

¶ 14    Thus, despite Wilson's contention, the trial court did not intend to apply the 2023 model instruction and, instead, provided the disputed instruction in accordance with the 2022 model instruction then in place.  For these reasons, neither the majority nor I need to address whether it would be structural error, or some other form of error, for a trial court to omit the "lack of evidence" language at a trial held after the 2023 model instruction was published.

¶ 15    Turning to Wilson's substantive argument, for the reasons explained in *Melara*, ¶¶ 24-32, I agree with the majority that the

disputed instruction did not lower the prosecution's burden of proof or undermine the presumption of innocence when considered in the context of the jury instructions as a whole. *See Riley v. People*, 266 P.3d 1089, 1092 (Colo. 2011) (we review de novo a trial court's jury instructions as a whole to determine whether the court met this obligation). This conclusion is amplified by the trial court's rulings and the arguments presented by Wilson's counsel.

¶ 16    While rejecting the request to include the "lack of evidence" language in the disputed instruction, the trial court made clear that it would permit Wilson's counsel to argue the lack of evidence in closing argument. And Wilson's counsel did just that, repeatedly emphasizing the perceived lack of evidence in this case. True, closing argument is not a substitute for accurate jury instructions. *People v. Jones*, 2018 COA 112, ¶ 64 ("'[A]rguments by counsel cannot substitute for instructions by the court.' It is the duty of the trial court — not counsel — to 'correctly instruct the jury on all matters of law for which there is sufficient evidence to support giving instructions.'" (first quoting *Taylor v. Kentucky*, 436 U.S. 478, 488-89 (1978); and then quoting *People v. Jacobson*, 2017 COA 92, ¶ 10)). But the fact that Wilson's counsel was permitted to tell the

jury, "[I]f the prosecution and police officers don't present evidence, you get to use that against them," reflects that the instructions, as a whole, did not preclude him from arguing the asserted "serious lack of evidence in the case."

## II.    Real Possibility

¶ 17    I share the majority's conclusion that, for the reasons stated in *Schlehuber*, the trial court did not err by instructing the jury that, "if you think there is a real possibility that the defendant is not guilty, then the prosecution has failed to prove the crime charged beyond a reasonable doubt." *Schlehuber*, ¶¶ 9, 32 (quoting COLJI-Crim. E:03 (2022)).

## III.    Future Clarity

¶ 18    Finally, I encourage the supreme court to address the uncertainties currently associated with the model reasonable doubt instruction, which have created significant concerns among the criminal bar, vexed our trial courts, led to a multitude of appeals with varying results, and created ongoing uncertainty.

¶ 19    By way of illustration of these uncertainties, the committee stated that the 2022 model instruction "in no ways casts aspersions on the validity of the prior version of this instruction." COLJI-Crim.

E:03 (2022) cmt. 1. And the supreme court and divisions of this court have repeatedly approved the pre-2022 version of the model reasonable doubt instruction, including the lack of evidence language. *See, e.g., People v. Vanrees*, 125 P.3d 403, 410 (Colo. 2005) (approving instruction that allowed the jury to consider the evidence or lack of evidence presented in the case); *People v. Rubio*, 222 P.3d 355, 363 (Colo. App. 2009) ("The instruction that reasonable doubt can arise not just from the evidence but also from 'lack of evidence' strengthens rather than undercuts the presumption of innocence."). So presumably that instruction remains valid.

¶ 20 At least two divisions of this court have also concluded in published opinions that the 2022 modified instruction did not lower the prosecution's burden of proof and therefore did not amount to structural error. *See Schlehuber*, ¶ 19; *Melara*, ¶ 32. *But cf. Melara*, ¶119 (Welling, J., specially concurring) (concluding that "the trial court's denial of [the defendant's] request to include the 'or lack of evidence' language, though understandable based on the then-recent change to the [2022] model instruction, nevertheless lacked a rational basis" and was therefore an abuse of discretion).

But in both *Melara* and *Schlehuber*, the divisions also concluded that it is better for trial courts to include the "lack of evidence language." *See Melara*, ¶ 28 ("[G]oing forward (and absent contrary direction from the supreme court), we conclude that trial courts should include a statement within the reasonable doubt instruction that the jury may consider the lack of evidence in a case when determining whether the prosecution has met its burden."); *Schlehuber*, ¶ 20. The lack of evidence language is now embodied in the 2023 model instruction, which has likely been used in some — and probably the majority — of cases tried after the model 2023 instruction became publicly available.

¶ 21     As it stands, then, we have three varying reasonable doubt instructions that have been utilized in our trial courts and approved by our appellate courts within the last three years. So how are trial courts to decide which instruction to use going forward? I appreciate the oft-repeated adage that trial courts have wide discretion in fashioning the content of a particular instruction, so long as the instructions as a whole adequately inform the jury of the applicable law. *See People v. Manyik*, 2016 COA 42, ¶ 65; *Tibbels v. People*, 2022 CO 1, ¶ 25 ("[T]rial courts retain some

flexibility in defining for the jury what constitutes a reasonable doubt."). But we have provided trial courts no meaningful guidance on what factors they should consider in exercising their discretion in the context of the various reasonable doubt instructions currently on the menu. Does it depend on the particular facts of a case, the persuasiveness of the arguments made in an individual case, the judicial officer's subjective preference, or some other factor? On an issue as fundamental and essential to our criminal justice system as reasonable doubt, I respectfully suggest that the public, litigants, and courts would greatly benefit from having a single, approved burden of proof instruction (whether combined with a presumption of innocence instruction or otherwise).

¶ 22 Such an outcome would promote efficiency and confidence in the criminal justice system. Currently, the debate over which of the three reasonable doubt instructions that the court should give in a particular case has fallen on either side of a predictable fault line. Prosecutors urge the use of the 2022 model instruction, while defendants argue for some version of the pre-2022 model instruction or, at a minimum, the 2023 model instruction. That fault line, the multiple options currently available to trial courts,

and the nebulous nature of a trial court's discretion in this context are not desirable. They create subjectivity, uncertainty, and perceived inconsistencies in the application of a foundational principle of our criminal justice system. *See Tibbels*, ¶ 24 ("The [reasonable doubt] standard provides concrete substance for the presumption of innocence — that bedrock 'axiomatic and elementary' principle whose 'enforcement lies at the foundation of the administration of our criminal law.'" (quoting *In re Winship*, 397 U.S. 358, 363 (1970))).

¶ 23     For these reasons, I respectfully encourage the supreme court to intervene and adopt a uniform definition of reasonable doubt that will permit Colorado's courts to speak with a clear and unified voice on this fundamental issue.