23CA1830 Peo v Ocampo 04-30-2026

COLORADO COURT OF APPEALS

---

Court of Appeals No. 23CA1830
Lincoln County District Court No. 22CR59
Honorable H. Clay Hurst, Judge

---

The People of the State of Colorado,

Plaintiff-Appellee,

v.

Jose A. Ocampo,

Defendant-Appellant.

---

JUDGMENT AFFIRMED

Division VI
Opinion by JUDGE GROVE
Yun and Schock, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced April 30, 2026

---

Philip J. Weiser, Attorney General, Rachel Lieb, Assistant Attorney General II, Denver, Colorado, for Plaintiff-Appellee

Megan A. Ring, Colorado State Public Defender, Kamela Maktabi, Deputy State Public Defender, Denver, Colorado, for Defendant-Appellant

¶ 1    Defendant, Jose A. Ocampo, appeals the judgment of conviction entered on a jury verdict finding him guilty of possession of contraband in the second degree.  We affirm.

## I.    Background

¶ 2    A reasonable jury could find the following based on evidence presented at trial:

¶ 3    In June 2022, while confined at the Limon Correctional Facility, Ocampo was strip-searched.  During the search, an officer discovered a broken balloon containing an item wrapped in cellophane concealed inside Ocampo's COVID-19 mask.

¶ 4    The officer turned the materials over to the Office of Inspector General (OIG), which opened an investigation.  The Colorado Bureau of Investigation (CBI) tested the materials and found they contained buprenorphine — the active ingredient in Suboxone, a prescription drug commonly used to treat opioid addiction.  Buprenorphine is a schedule V controlled substance.

¶ 5    The prosecution charged Ocampo with possession of contraband in the second degree.  § 18-8-204.2, C.R.S. 2025.  At trial, defense counsel argued that Ocampo did not knowingly possess an illegal substance.  The jury convicted Ocampo, and the

1

court sentenced him to thirty months in the custody of the Department of Corrections, to run consecutively with an unrelated sentence.

¶ 6    Ocampo now appeals, arguing that the district court (1) violated his due process rights by improperly instructing the jury on reasonable doubt and (2) erroneously admitted evidence for which the prosecution did not sufficiently establish a chain of custody.  We affirm.

## II.    Jury Instructions

¶ 7    Ocampo contends that the district court reversibly erred by giving the 2022 model jury instruction on reasonable doubt because that instruction lowered the prosecution's burden of proof.  We disagree.

### A.    Applicable Facts

¶ 8    In 2022, the Model Criminal Jury Instructions Committee revised the model instruction for reasonable doubt.  *People v. Melara*, 2025 COA 48, ¶ 12.  In addition to modifying the reasonable doubt instruction, the committee also combined it with the presumption of innocence instruction into a single model instruction.  *See* COLJI-Crim. E:03 (2022).

2

¶ 9    Before the 2022 revision, the model reasonable doubt instruction read as follows:

> Reasonable doubt means a doubt based upon reason and common sense which arises from a fair and rational consideration of all of the evidence, or the lack of evidence, in the case. It is a doubt which is not a vague, speculative or imaginary doubt, but such a doubt as would cause reasonable people to hesitate to act in matters of importance to themselves.
>
> If you find from the evidence that each and every element of a crime has been proven beyond a reasonable doubt, you should find the defendant guilty of that crime. If you find from the evidence that the prosecution has failed to prove any one or more of the elements of a crime beyond a reasonable doubt, you should find the defendant not guilty of that crime.

COLJI-Crim. E:03 (2021).

¶ 10    Over defense counsel's objections, the district court gave the following 2022 model instruction at Ocampo's trial:

> Every person charged with a crime is presumed innocent. This presumption of innocence remains with the defendant throughout the trial and should be given effect by you unless, after considering all the evidence, you are convinced that the defendant is guilty beyond a reasonable doubt.
>
> The burden of proof in this case is upon the prosecution. The prosecution must prove to

the satisfaction of the jury beyond a reasonable doubt the existence of each and every element necessary to constitute the crime charged. This burden requires more than proof that something is highly probable, but it does not require proof with absolute certainty.

Proof beyond a reasonable doubt is proof that leaves you firmly convinced of the defendant's guilt. If you are firmly convinced of the defendant's guilt, then the prosecution has proven the crime charged beyond a reasonable doubt. But if you think there is a real possibility that the defendant is not guilty, then the prosecution has failed to prove the crime charged beyond a reasonable doubt.

After considering all the evidence, if you decide the prosecution has proven each of the elements of a crime charged beyond a reasonable doubt, you should find the defendant guilty of that crime.

After considering all the evidence, if you decide the prosecution has failed to prove any one or more of the elements of a crime charged beyond a reasonable doubt, you should find the defendant not guilty of that crime.

COLJI-Crim. E:03 (2022).

### B.     Standard of Review and Applicable Law

¶ 11     We review de novo whether a trial court accurately instructed the jury on the law. *Johnson v. People*, 2019 CO 17, ¶ 8.

¶ 12    The Due Process Clause of the United States Constitution "protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *Tibbels v. People*, 2022 CO 1, ¶ 23 (quoting *In re Winship*, 397 U.S. 358, 364 (1970)).

¶ 13    The district court must properly instruct the jury on the reasonable doubt standard. *Id.* at ¶ 25. Although the court has some flexibility in how it defines reasonable doubt, an instruction that lowers the prosecution's burden of proof below that standard constitutes structural error requiring automatic reversal. *People v. Schlehuber*, 2025 COA 50, ¶ 13.

¶ 14    To determine whether an instruction impermissibly lowered the burden of proof, we apply a "functional test, asking whether there is a reasonable likelihood that the jury understood [the] contested instruction, in the context of the instructions as a whole and the trial record, to allow a conviction based on a standard lower than beyond a reasonable doubt." *Tibbels*, ¶ 36. The district court has broad discretion to determine the form and style of instructions as long as they properly inform the jury of the law. *McDonald v. People*, 2021 CO 64, ¶ 54. Thus, if the instructions, as a whole,

5

correctly inform the jury of the prosecution's burden of proof beyond a reasonable doubt, there is no due process violation. *Johnson*, ¶ 14.

## C. Analysis

¶ 15    Like the defendant in *Schlehuber,* Ocampo challenges four aspects of the 2022 model jury instruction as given by the district court: (1) its failure to direct the jury that it could consider the "lack of evidence"; (2) its omission of the "hesitate to act" phrase that was in the previous model instruction; (3) its equating reasonable doubt with "a real possibility that the defendant is not guilty"; and (4) its use of the phrase "firmly convinced" to define proof beyond a reasonable doubt. *Schlehuber*, ¶ 16.[1]

¶ 16    We agree with the division's reasoning in *Schlehuber. Id.* at ¶¶ 16-35. Ocampo's argument that the omission of the "lack of evidence" language in the 2022 model instructions undermined the reasonable doubt standard by diminishing consideration of

---

[1] Ocampo also asserts that the cumulative effects of these errors lowered and shifted the prosecution's burden of proof. *See People v. Schlehuber*, 2025 COA 50, ¶ 35. For the same reasons we conclude that none of the claimed errors individually lowered the burden of proof, we conclude they did not do so cumulatively. *See id.*

6

"evidentiary gaps" does not withstand scrutiny when the instructions are read as a whole. *See Schlehuber*, ¶¶ 19-23. And contrary to Ocampo's assertion, the *Melara* court's suggestion that a trial court "should inform the jury, as part of the reasonable doubt instruction, that it may consider the lack of evidence in [a] case" did not alter its conclusion that the 2022 instructions "did not impermissibly lower the prosecution's burden of proof." *Melara*, ¶ 24.

¶ 17    The removal of the "hesitate to act" language, likewise, did not deprive the jury of the context necessary to understand and apply the concept of reasonable doubt. The 2022 instructions define reasonable doubt using "firmly convinced" and "real possibility." As the *Schlehuber* court explained, "'firmly convinced' correctly connotes a standard of 'near certitude' — one that is higher than 'highly probable' but stops short of absolute certainty," and the phrase "real possibility" instructs the jury not to acquit "simply because it can conceive of *some* fanciful possibility that the defendant is not guilty." *Schlehuber*, ¶ 31 (citations omitted). These terms work in tandem: A juror could not, as Ocampo argues, be "firmly convinced" of a defendant's guilt while concomitantly

believing there was a "real possibility" of innocence. Thus, the concept of reasonable doubt is adequately conveyed, and the burden of proof remains firmly with the prosecution. *Id.* at ¶¶ 32-34.

¶ 18 Because we conclude that the 2022 model jury instruction on reasonable doubt did not lower the prosecution's burden of proof, it follows that the district court did not violate Ocampo's due process rights by giving it to the jury.

### III. Chain of Custody

¶ 19 Ocampo contends that the district court erred by admitting the buprenorphine found during the search into evidence because the prosecution failed to sufficiently establish chain of custody. We are not persuaded.

### A. Applicable Facts

¶ 20 After searching Ocampo and confiscating the COVID-19 mask and suspected contraband, the officer placed both into a nearby OIG lockbox. OIG Inspector Colpitts[2] retrieved the materials from

---

[2] The transcript spells this witness's last name as "Culpits" (with a notation that the spelling is phonetic). We use the spelling that OIG Inspector Colpitts used when signing an affidavit that appears elsewhere in the court file.

the box the next day and inspectors opened an investigation. OIG Inspector Henriquez then delivered the materials to the OIG office in Colorado Springs. From there, Henriquez testified, "[i]t was picked up by o[u]r evidence technician to be taken to the laboratory of the CBI, which is the Colorado Bureau of Investigation[]."

¶ 21 Once delivered, a unique laboratory case number was generated to track the evidence as it moved through the lab. CBI Forensic Scientist Katherine Lance testified that the case number tracked who submitted the evidence, who the evidence was connected to, and who possessed the evidence within the lab. Lance confirmed the specimen's laboratory case tracking number, documented it in her report, tested the materials, and found they contained buprenorphine.

¶ 22 At trial, defense counsel objected when the prosecution moved to admit Exhibit 3, the bagged materials the laboratory tested, into evidence. Counsel argued that the chain of custody had not been established. The court overruled the objection and admitted the exhibit.

## B. Standard of Review and Applicable Law

¶ 23    A district court's decision to admit evidence is reviewed for an abuse of discretion and will be overturned only if the decision was arbitrary, unreasonable, or unfair. *People v. James*, 117 P.3d 91, 94 (Colo. App. 2004).

¶ 24    CRE 901(a) requires that an object be identified as a condition precedent to its admissibility. That condition is satisfied by "evidence sufficient to support a finding that the matter in question is what its proponent claims." *Id.* The rationale is that in the absence of a showing that the evidence is what its proponent alleges, the evidence is simply irrelevant. *People v. Rodriguez*, 2022 COA 11, ¶ 14.

¶ 25    "When the proffered evidence is 'unique, readily identifiable and relatively resistant to change,' a witness can authenticate it by identifying the evidence as the item in question." *Id.* at ¶ 16 (quoting *United States v. Cardenas*, 864 F.2d 1528, 1531 (10th Cir. 1989)). Conversely, "when the evidence . . . is not readily identifiable and is susceptible to alteration by tampering or contamination, the proponent of the evidence must authenticate it by establishing a chain of custody for the item." *Id.* at ¶ 21. "The

chain of custody rule requires that the proponent of real evidence establish that the evidence was involved in the incident and that the condition of the evidence at trial is substantially unchanged." *People v. Mascarenas*, 666 P.2d 101, 112 (Colo. 1983). "To do so, the proponent must introduce evidence showing where the item has been from its initial seizure until it is offered at trial." *Rodriguez*, ¶ 23. And even where there is some confusion about the chain of custody, the evidence may still be deemed authentic under CRE 901(a) so long as it was accounted for at all times. *People v. Atencio*, 565 P.2d 921, 923 (Colo. 1977).

¶ 26     Speculation about the possibility of tampering is insufficient to establish a break in the chain of custody. *People v. LeMasters*, 666 P.2d 573, 577 (Colo. App. 1983), *aff'd*, 678 P.2d 538 (Colo. 1984). And absent any evidence of tampering or a lack of authentication, the proponent of the evidence is not required to call each witness who may have handled the item. *People v. Sutherland*, 683 P.2d 1192, 1197 (Colo. 1984).

### C.     Analysis

¶ 27     Ocampo contends the chain of custody was not sufficiently established because the prosecution failed to show that the tested

evidence was the same as what was collected when he was searched. We disagree.

¶ 28 Testimony at trial established with reasonable certainty that Exhibit 3 consisted of the evidence collected during Ocampo's search and bore no signs of alteration or tampering. *See Sutherland*, 683 P.2d at 1197 (The "burden is upon the party offering the evidence to show to the satisfaction of the court, with reasonable certainty, that there was no alteration of or tampering with the evidence." (citation omitted)); *Mascarenas*, 666 P.2d at 112. Based on the "properly labeled" evidence tag and its contents — rectangular, orange-colored, barcoded strips that appeared to be "brand-name Suboxone" — Officer Henriquez testified that Exhibit 3 was what he transported to the Colorado Springs OIG office. Forensic Scientist Lance likewise confirmed that Exhibit 3 was the specimen she tested and that she received it without any suggestion of tampering.

¶ 29 Nevertheless, Ocampo maintains that the trial testimony did not sufficiently establish that the tested evidence was "accounted for at all times." *Atencio*, 565 P.2d at 923. He offers no evidence of tampering but asserts a break in the chain of custody because the

prosecution did not establish how the tested materials were transported from the Colorado Springs OIG office to the CBI lab.

¶ 30 We perceive no abuse of discretion. Ocampo's argument seems to rest on the premise that eyewitness testimony is required for each step in the chain of custody. But the prosecution's burden is not so demanding. *See Rodriguez*, ¶ 24. The testimony here accounted for "where the item ha[d] been from its initial seizure until it [was] offered at trial," *id.* at ¶ 23, and established that it arrived for testing without signs of tampering, *see People v. Brake*, 553 P.2d 763, 768 (Colo. 1976) (explaining chain of custody was properly shown where the "envelope seal was unbroken" when an officer delivered a "lock seal envelope" to CBI even though "no one was able to state who []moved the envelope" from CBI to the lab); *see also Sutherland*, 683 P.2d at 1197 (citing *State v. Crawford*, 573 P.2d 982 (Kan. 1977), for the proposition that evidence was admissible despite the prosecution's inability to locate a nurse who took the exhibit from the examination room to a waiting messenger). Therefore, because Ocampo offered "only speculation that there was tampering," *Sutherland*, 683 P.2d at 1198 (citation omitted), the court properly admitted the evidence and left "any

13

weakness in the chain of custody" as a "question of weight for the jury," *Atencio*, 565 P.2d at 924.

## IV. Disposition

¶ 31    We affirm the judgment.

JUDGE YUN and JUDGE SCHOCK concur.