1
 2026 CO 3 The People of the State of Colorado, Plaintiff-Appellant: v. Amanda Ann Soron. Defendant-Appellee: No. 25SA203Supreme Court of Colorado, En BancJanuary 12, 2026
          
 Interlocutory Appeal from the District Court Arapahoe County
 District Court Case No. 23CR609 Honorable Natalie Girard
 Stricklin, Judge
 
 
          
 Attorneys for Plaintiff-Appellant:
 
 
           Amy L.
 Padden, District Attorney, Eighteenth Judicial District
 
 
           L.
 Andrew Cooper, Senior Deputy District Attorney
 
 
          
 Centennial, Colorado
 
 
          
 Attorneys for Defendant-Appellee:
 
 
           Megan
 A. Ring, Public Defender
 
 
           Gracen
 W. Short, Deputy Public Defender
 
 
          
 Dillon, Colorado
 
 
           Erin
 Domaracki, Deputy Public Defender
 
 
          
 Centennial, Colorado
 
 
          
 JUSTICE GABRIEL delivered the Opinion of the Court, in which
 CHIEF JUSTICE MARQUEZ, JUSTICE BOATRIGHT, JUSTICE HOOD, and
 JUSTICE BERKENKOTTER joined.
 
 
          
 OPINION
 
 
          
 GABRIEL JUSTICE
 
 2
 
          ¶1
 In this interlocutory appeal, the People ask this court to
 reverse the trial court's order suppressing both Amanda
 Ann Soron's hospital records and the body-worn camera
 video and notes of a police officer who was present in the
 ambulance ride to a hospital and during Soron's treatment
 at the hospital after police found her and her deceased
 newborn child behind a store.
 
 
          ¶2
 We conclude that the trial court correctly determined that
 Soron's medical records are protected by the
 physician-patient privilege and that the child abuse
 exception to that privilege does not apply because that
 exception relates only to testimony, not to documents. We
 further conclude, however, that additional findings are
 necessary to determine whether the information contained in
 the officer's body-worn camera video and notes is
 protected by the physician-patient privilege and, if so,
 whether the legislature has narrowed that privilege based on
 other policy interests.
 
 
          ¶3
 Accordingly, we affirm in part and reverse in part the trial
 court's suppression order, and we remand this case to the
 trial court for further proceedings consistent with this
 opinion.
 
 
          I.
 Facts and Procedural Background
 
 
          ¶4
 Soron, who was unhoused, gave birth outdoors behind a
 Lowe's home improvement store. Temperatures were
 reportedly below freezing at the time,
 
 3
 
 and police found her shortly after the birth under a tarp
 with the child still attached to her by the umbilical cord.
 Soron and the child were transported by ambulance to Sky
 Ridge Medical Center, a hospital, where the child was
 pronounced dead.
 
 
          ¶5
 Greenwood Village Police Officer Diego Moreno accompanied
 Soron in the ambulance and then during portions of her stay
 at the hospital. Although Officer Moreno did not arrest Soron
 and told medical personnel that she was not in custody but
 rather was in an investigative detention, he donned scrubs
 and sat in on a surgical procedure to deliver Soron's
 placenta. (Soron was sedated during this procedure.) Officer
 Moreno's body-worn camera recorded the procedure, and,
 while at the hospital, he collected evidence, took
 photographs, and initiated a crime scene log in which he
 recorded the statements that Soron had made to medical
 providers.
 
 
          ¶6
 Approximately four months later, Soron was arrested and
 charged with one count of child abuse resulting in death
 under section 18-6-401(1)(a) and (7)(a)(I), C.R.S. (2025), a
 class 2 felony. The parties then began conducting discovery.
 
 
          ¶7
 The following month, Greenwood Village Police Detective
 Anthony Costarella filed an affidavit in support of a request
 for a court order for production of records
 ("POR"). This request sought "all
 medical-related information about Amanda SORON's and the
 deceased female baby's entire hospital visit while at
 Skyridge [sic] Medical Center."
 
 4
 
          ¶8
 The trial court subsequently issued a POR, ordering the
 hospital to produce all medical records relating to
 Soron's and the child's treatment from the time they
 were taken by ambulance to the hospital until Soron was
 released from treatment. The records ordered to be produced
 included (1) the entire medical record for treating Soron and
 the child; (2) the entire radiological records and films of
 any related medical procedures conducted on Soron and the
 child; (3) all laboratory and toxicology results related to
 the medical treatment for Soron and the child; and (4) all
 ambulance notes, trip sheets, and doctors' or nurses'
 notes relating to the treatment of Soron and the child. The
 hospital appears to have complied with the POR.
 
 
          ¶9
 Soron subsequently moved to prevent the People from reviewing
 her medical records without a waiver or consent and further
 requested a veracity hearing relating to Detective
 Costarella's above-described affidavit, based on
 Soron's allegations that the affidavit contained
 misstatements by omission. Shortly thereafter, however, the
 court referred Soron for an evaluation of her competency, and
 in an order issued one month later, the court found Soron
 incompetent to proceed and committed her for in-patient
 restoration to competency.
 
 
          ¶10
 Almost two years later, while Soron was still deemed
 incompetent, the court conducted a review hearing related to
 Soron's competency. At this hearing,
 
 5
 
 Soron's counsel asked the court to rule on Soron's
 previously filed motion to prevent review of her medical
 records. Because the prosecutor of record was not present at
 this hearing (another prosecutor was covering for her), the
 court scheduled a veracity hearing for two months later.
 
 
          ¶11
 Nine days after the competency review hearing, however, the
 prosecution filed a request to deny Soron's motion and to
 vacate the veracity hearing. Soron's counsel then filed a
 new motion requesting that the trial court vacate the POR.
 
 
          ¶12
 In this new motion, Soron's counsel argued, among other
 things, that the detective's affidavit had misled the
 court by omitting the facts that (1) the POR had implicated
 Soron's privileged health records; (2) Soron was actively
 psychotic and under the influence of hospital drugs at the
 time she made the statements quoted in Detective
 Costarella's affidavit; and (3) without Soron's
 knowledge or consent, officers had taped medical procedures
 that Soron had undergone. Counsel further contended that
 because Soron had not consented to the production of her
 medical records, the prosecution had obtained those records
 illegally and in violation of the POR statute. Counsel thus
 asserted that everything that had happened at the hospital,
 including the medical procedures that were captured on
 Officer Moreno's body-worn camera video, was protected by
 the physician-patient privilege and that the court should
 take action to preclude unauthorized persons from obtaining
 access to Soron's privileged information.
 
 6
 
 Counsel also renewed Soron's request for a veracity
 hearing to consider the alleged omissions in the
 detective's affidavit.
 
 
          ¶13
 The prosecution responded to Soron's counsel's new
 motion, arguing, as pertinent here, that the
 physician-patient privilege did not apply in a case such as
 this, in which child abuse is alleged. Soron's counsel
 then filed a reply, and both parties submitted supplemental
 information. Thereafter, Soron was restored to competency.
 
 
          ¶14
 Upon Soron's restoration to competency, the trial court
 issued a detailed written order, granting Soron's motion
 to prevent review of her privileged medical information. In
 so ruling, the court found that the child abuse exception to
 the physician-patient privilege did not apply to authorize
 the production of Soron's medical records because the
 exception only authorizes physicians to testify in
 child abuse prosecutions. It does not cover documents. The
 court further found that the procedures captured on Officer
 Moreno's body-worn camera video and in his related notes
 were for purposes of medical treatment and had been obtained
 without Soron's knowledge or consent. As a result, in the
 court's view, the footage and notes reflected privileged
 medical information that the law enforcement officers had
 accessed improperly.
 
 
          ¶15
 Based on these findings, the trial court ordered the People
 to surrender Soron's medical file to the court for
 preservation and sealing. The court further
 
 7
 
 ordered that the body-worn camera footage should be sealed
 from the view of members of law enforcement and the
 prosecution. And the court ordered the People to provide a
 copy of that footage to the court for preservation and
 sealing. Having so ruled, the court denied Soron's
 renewed request for a veracity hearing as moot.
 
 
          ¶16
 The People thereafter filed this interlocutory appeal.
 
 
          II.
 Analysis
 
 
          ¶17
 We begin by addressing our jurisdiction over this matter.
 Next, we set forth the pertinent standard of review and
 principles of statutory construction. We then discuss the
 applicable law and apply that law to the facts before us,
 first addressing the medical records and then the body-worn
 camera video and related notes.
 
 
          A.
 Jurisdiction
 
 
          ¶18
 Section 16-12-102(2), C.R.S. (2025), and C.A.R. 4.1(a)
 authorize the prosecution to file an interlocutory appeal in
 this court from a trial court's order granting a
 defendant's pretrial motion to suppress evidence under,
 among other rules, Crim. P. 41(e) (providing for the
 suppression of evidence obtained by way of a warrantless
 search or an invalid warrant in violation of Fourth Amendment
 principles). To obtain interlocutory review, however, the
 prosecution must certify to both the judge who granted the
 motion and this court that the appeal is not taken for
 purposes of delay and that the evidence at issue is a
 substantial part of
 
 8
 
 the proof of the charge pending against the defendant. §
 16-12-102(2); C.A.R. 4.1(a); accord People v.
 Thompson, 2021 CO 15, ¶ 13, 500 P.3d 1075, 1078.
 The prosecution has so certified here, but Soron contests our
 jurisdiction, arguing that the trial court did not base its
 order on Fourth Amendment concerns but rather relied on
 alleged violations of the physician-patient privilege and the
 POR statute.
 
 
          ¶19
 Although we acknowledge that Soron's argument finds some
 support in the record, we note that in issuing the ruling now
 before us, the trial court expressly looked to Crim. P.
 41(e), analyzed the questions presented to it in accordance
 with the law governing search warrants, and relied on Fourth
 Amendment principles. In these circumstances, we conclude
 that we may properly exercise jurisdiction over the
 People's appeal pursuant to section 16-12-102(2) and
 C.A.R. 4.1(a).
 
 
          B.
 Standard of Review and Principles of Statutory
 Construction
 
 
          ¶20
 A trial court's suppression order presents a mixed
 question of law and fact. Thompson, ¶ 15, 500
 P.3d at 1078. Accordingly, on review, we accept the
 court's findings of historic fact if those findings are
 supported by competent evidence, but we assess the legal
 significance of the facts de novo. Id. In conducting
 our review, we do not substitute our own judgment for that of
 the trial court unless the court's findings are clearly
 erroneous or unsupported by the record. People v.
 Glick, 250 P.3d 578, 582 (Colo. 2011). We will, however,
 correct on review the court's application of an erroneous
 legal standard or its ultimate legal conclusion, if that
 
 9
 
 conclusion is inconsistent with or unsupported by evidentiary
 findings. People v. Kaiser, 32 P.3d 480, 483 (Colo.
 2001).
 
 
          ¶21
 "In reviewing a trial court's ruling on a motion to
 suppress, we look solely to the record created at the
 suppression hearing." Thompson, ¶ 16, 500
 P.3d at 1078.
 
 
          ¶22
 In addition, we review questions of statutory interpretation
 de novo. People in Int. of B.C.B., 2025 CO 28,
 ¶ 24, 569 P.3d 74, 79. When interpreting a statute, we
 seek to discern and effectuate the legislature's intent.
 Id. In doing so, we apply words and phrases in
 accordance with their plain and ordinary meanings, and we
 consider the entire statutory scheme to give consistent,
 harmonious, and sensible effect to all of its parts.
 Id. Moreover, we must avoid interpretations that
 would render any statutory words or phrases superfluous or
 that would lead to illogical or absurd results. Id.
 
 
          ¶23
 In construing a statute, we respect the legislature's
 choice of language. Id. at ¶ 25, 569 P.3d at
 79. Accordingly, we may not add words to a statute or
 subtract words from it. Id.
 
 
          ¶24
 If the statutory language is unambiguous, then we apply it as
 written, and we need not look to other rules of statutory
 construction. Id. at ¶ 26, 569 P.3d at 79.
 
 10
 
          C.
 PORs and the Physician-Patient Privilege
 
 
          ¶25
 A court may order a POR for records in the actual or
 constructive control of a business entity when such records
 "would be material evidence in a subsequent criminal
 prosecution in this state." § 16-3-301.1(2)(e),
 C.R.S. (2025). A court may order the POR, however, "only
 on receipt of an affidavit sworn to or affirmed before the
 judge and relating facts sufficient to . . . [i]dentify or
 describe, as nearly as may be, the records that shall be
 produced." § 16-3-301.1(3)(a)(II).
 
 
          ¶26
 In its definition of "[r]ecords," the POR statute
 exempts from the scope of a POR any records protected by the
 physician-patient privilege: "'Records' shall
 include all documents . . . or other information retained by
 a business entity in connection with business activity,
 but shall not include an item that is privileged pursuant
 to section 13-90-107, C.R.S., unless the person who possesses
 the privilege gives consent." §
 16-3-301.1(11)(e) (emphasis added).
 
 
          ¶27
 Section 13-90-107(1)(d), C.R.S. (2025), in turn, sets forth
 the physician-patient privilege:
 
 
 [A] person must not be examined as a witness in the following
 cases: . . .
 
 
 (d) A physician, surgeon, or registered professional nurse
 duly authorized to practice his or her profession pursuant to
 the laws of this state or any other state shall not be
 examined without the consent of his or her patient as to any
 information acquired in attending the patient that was
 necessary to enable him or her to prescribe or act for the
 patient, [subject to exceptions not applicable here].
 
 11
 
          ¶28
 This privilege recognizes "the inherent importance of
 privacy in the physician-patient relationship by protecting
 the confidences once made." Alcon v. Spicer,
 113 P.3d 735, 738 (Colo. 2005). Moreover, the privilege is
 not limited to communications with a physician during an
 examination conducted for purposes of treatment. Trenshaw
 v. Jennings, 2025 CO 23, ¶ 26, 568 P.3d 413, 421.
 It also includes observations made by a physician during such
 an examination. Id. And the privilege's
 protection extends beyond in-court testimony and covers the
 pretrial discovery of information, including privileged
 information contained in medical records. Id. The
 privilege may protect such information even if it may be
 relevant to the subject matter of the case. Id. at
 ¶ 28, 568 P.3d at 421.
 
 
          ¶29
 The physician-patient privilege is personal to the patient
 and, thus, may not be invoked or waived by the physician or a
 third party. Id. at ¶ 29, 568 P.3d at 421-22.
 The privilege does, however, have limits. For example,
 information is privileged only when it is necessary to enable
 the physician "to prescribe or act for the
 patient." § 13-90-107(1)(d). Accordingly, the
 privilege does not cover information obtained by a physician
 to assist a patient in pending litigation. Trenshaw,
 ¶ 30, 568 P.3d at 422. Nor would it cover a
 physician's testimony in a criminal case premised on a
 blood sample obtained at the request of a law enforcement
 officer investigating a defendant's level of
 intoxication. Id.
 
 12
 
          ¶30
 In addition to the foregoing limitations, the legislature has
 carved out an exception to the physician-patient privilege
 for testimony relating to child abuse: "The statutory
 privilege between patient and physician . . . shall not be
 available for excluding or refusing testimony in any
 prosecution for a violation of this section [i.e., the
 statute defining child abuse]." § 18-6-401(3)
 (emphasis added). The Supreme Court has defined
 "[t]estimony" as "[a] solemn declaration or
 affirmation made for the purpose of establishing or proving
 some fact." Crawford v. Washington, 541 U.S.
 36, 51 (2004) (second alteration in original) (quoting 2 Noah
 Webster, An American Dictionary of the English Language
 (1828)); see also Testimony, Black's Law
 Dictionary (12th ed. 2024) (defining "testimony" as
 "[e]vidence that a competent witness under oath or
 affirmation gives at trial or in an affidavit or
 deposition").
 
 
          D.
 Soron's Medical Records
 
 
          ¶31
 Turning then to the facts before us, we initially acknowledge
 Soron's contention that the POR at issue was not
 sufficiently particular and that it was overbroad. We need
 not address these concerns, however, because assuming without
 deciding that the POR was sufficiently particular and not
 overbroad, we conclude that the trial court properly
 determined that Soron's medical records are protected by
 the physician-patient privilege outlined in section
 13-90-107(1)(d) and that those records do not fall within the
 above-quoted child abuse exception.
 
 13
 
          ¶32
 Soron's medical records were created during the course of
 her treatment. Moreover, although a police officer was
 present when Soron was transported to and treated at the
 hospital, Soron had not been placed under arrest. And there
 is no indication in the record before us that the officer
 directed Soron's treatment for law enforcement purposes.
 Accordingly, we agree with the trial court that Soron's
 medical records were created as health care professionals
 were treating her and contained information necessary to
 allow the treatment providers to "prescribe or act"
 on her behalf as a patient. Id. Such records
 therefore fall within the physician-patient privilege.
 See id.
 
 
          ¶33
 The question thus becomes whether the above-noted child abuse
 exception to the physician-patient privilege applies here. We
 conclude that it does not.
 
 
          ¶34
 As noted above, the legislature expressly stated that the
 child abuse exception applies only to "testimony."
 § 18-6-401(3). In our view, this language is plain and
 unambiguous, and we must therefore apply it as written.
 B.C.B., ¶ 26, 569 P.3d at 79. Accordingly, we
 conclude that the child abuse exception does not apply to
 Soron's medical records, and, thus, those records remain
 privileged.
 
 
          ¶35
 We are not persuaded otherwise by the People's reliance
 on our opinion in People v. Christian, 632 P.2d 1031
 (Colo. 1981). Unlike the case now before us, that case did
 not involve the admissibility of documentary evidence.
 Id. at 1036. Rather, the question was whether the
 marital privilege applied to bar the
 
 14
 
 defendant's wife's testimony in a child abuse case
 (notwithstanding the child abuse exception to the marital
 privilege), given the defendant's argument that his
 wife's testimony was unrelated to the issue of child
 abuse. Id. We concluded that the exception applied
 and that the wife's testimony was admissible because if
 her testimony was not probative of the child abuse charge,
 then it should have been excluded, not on the basis of
 privilege, but because it was irrelevant or prejudicial.
 Id. We determined, however, that the testimony was,
 in fact, relevant. Id. at 1037. This reasoning,
 which concerned a witness's testimony and not documentary
 evidence, has no bearing on the issues before us in this
 case.
 
 
          ¶36
 We further decline the People's invitation to follow
 decisions in other states concluding that the
 physician-patient privilege does not apply in circumstances
 involving alleged child abuse. Those cases involved statutory
 language different from the plain and unambiguous statutory
 language at issue here, which, as noted above, involves only
 testimony. See, e.g., State ex rel. Udall v.
 Superior Ct., 904 P.2d 1286, 1288-89 (Ariz.Ct.App. 1995)
 (concluding that medical records of a juvenile charged with
 first degree murder after her newborn child was found
 deceased were admissible when the statute excepting criminal
 prosecutions for child abuse from the physician-patient
 privilege did not distinguish between documentary evidence
 and testimony); State ex rel. Juv. Dep't v.
 Spencer, 108 P.3d 1189, 1192, 1195 (Or. Ct. App. 2005)
 (concluding that a juvenile charged with child abuse could
 not
 
 15
 
 rely on the psychotherapist-patient privilege to exclude
 testimony or records of his treatment when the pertinent
 statute excluded "evidence" from the privilege and
 did not distinguish between testimony and documentary
 evidence); In re M.C., 391 N.W.2d 674, 675-76 (S.D.
 1986) (concluding, in a dependency and neglect matter, that
 the trial court had properly admitted the testimony of the
 mother's psychotherapist when the statutory exception to
 the physician-patient privilege in proceedings involving
 child abuse or neglect did not distinguish between testimony
 and documentary evidence).
 
 
          ¶37
 For these reasons, we conclude that the trial court correctly
 found that Soron's medical records were privileged and
 properly compelled the People to surrender those records to
 the court for preservation and sealing and to destroy any
 copies in the People's possession.
 
 
          E.
 Body-Worn Camera Video and Related Notes
 
 
          ¶38
 Having determined that Soron's medical records are
 privileged, we turn to Officer Moreno's body-worn camera
 video and related notes.
 
 
          ¶39
 The trial court concluded that the body-worn camera footage
 reflected medical information and, thus, the video and the
 officer's related notes regarding Soron's treatment
 were privileged. The People contend that this was error
 because, in their view, the body-worn camera video was not
 created by medical personnel but rather was a statutorily
 required recording created by law
 
 16
 
 enforcement and is, therefore, not a medical record protected
 by the physician-patient privilege. We conclude that further
 proceedings are necessary to decide this question.
 
 
          ¶40
 In People v. Covington, 19 P.3d 15, 22 (Colo. 2001),
 we observed that the physician-patient privilege is a
 statutory creation in derogation of the common law and that
 the legislature may narrow that privilege when doing so
 satisfies an overriding public policy need.
 
 
          ¶41
 Here, although the trial court concluded that the body-worn
 camera footage and the officer's related notes reflected
 medical information within the scope of the physician-patient
 privilege, the court apparently did so without taking any
 evidence and without making evidence-based factual findings
 in support of that ruling. Moreover, in so ruling, the court
 does not appear to have considered whether the statutory
 requirements governing the use of body-worn cameras, §
 24-31-902, C.R.S. (2025), evince countervailing public policy
 interests impacting the potential applicability of the
 physician-patient privilege in the circumstances presented
 here.
 
 
          ¶42
 Because we believe that the trial court is best positioned to
 consider these questions in the first instance, we reverse
 the portion of the trial court's order compelling the
 prosecution to seal the body-worn camera video and to provide
 the video to the court for preservation, and we remand to
 that court the issue of
 
 17
 
 the admissibility of the video and the officer's notes,
 with instructions that the court conduct the foregoing
 analysis and make appropriate findings in connection
 therewith. We, of course, express no opinion as to how the
 court should rule after conducting this analysis.
 
 
          III.
 Conclusion
 
 
          ¶43
 For these reasons, we conclude that the trial court correctly
 determined that Soron's medical records are protected by
 the physician-patient privilege and that the child abuse
 exception to the privilege does not apply here. We further
 conclude, however, that additional findings are necessary to
 determine whether the information contained in the
 officer's body-worn camera video or the officer's
 notes is also protected by the physician-patient privilege
 and, if so, whether the legislature has narrowed the
 privilege based on other policy interests.
 
 
          ¶44
 Accordingly, we affirm in part and reverse in part the trial
 court's suppression order, and we remand this case to the
 trial court for further proceedings consistent with this
 opinion.
 
 
          
 JUSTICE SAMOUR concurred in part and dissented in part.
 
 18
 
          
 JUSTICE SAMOUR, concurring in part and dissenting in part.
 
 
          ¶45
 I agree with the majority that it was error for the district
 court to conclude, without taking any evidence and making
 factual findings, that Officer Diego Moreno's body-worn
 camera footage and related notes reflect medical information
 protected by the physician-patient privilege, which is set
 forth in section 13-90-107(1)(d), C.R.S. (2025). Maj. op.
 ¶ 41. Relatedly, I agree with the majority that the
 court mistakenly failed to consider whether the statutory
 requirements governing the use of body-worn cameras, §
 24-31-902, C.R.S. (2025), evince countervailing public policy
 interests impacting the potential applicability of the
 physician-patient privilege in the circumstances presented in
 this case. Maj. op. ¶ 41. Because the majority and I are
 of one mind regarding Officer Moreno's body-worn camera
 footage and related notes, I have no further comment on that
 front.
 
 
          ¶46
 Where I part company with my colleagues is on their
 conclusion that the child abuse exception to the
 physician-patient privilege hewn in section 18-6-401(3),
 C.R.S. (2025), doesn't apply to the medical records at
 issue. Maj. op. ¶ 31. On this front, I do have something
 to say.
 
 
          ¶47
 The exception sculpted by the legislature in section
 18-6-401(3) provides that the physician-patient privilege
 "shall not be available for excluding or refusing
 testimony in any prosecution for a violation of this section
 [i.e., the statute defining
 
 19
 
 child abuse]." The majority arrives at today's
 decision by overtechnically construing the word
 "testimony" in this statutory exception to refer
 literally to "[a] solemn declaration or affirmation made
 for the purpose of establishing or proving some fact."
 Maj. op. ¶ 30 (quoting Crawford v. Washington,
 541 U.S. 36, 51 (2004), which in turn quoted 2 Noah Webster,
 An American Dictionary of the English Language (1828));
 see also id. (quoting Black's Law Dictionary
 (12th ed. 2024), which defines "testimony" as
 "[e]vidence that a competent witness under oath or
 affirmation gives at trial or in an affidavit or
 deposition").
 
 
          ¶48
 So, what's wrong with giving the word
 "testimony" this rigid interpretation? It
 doesn't reflect the meaning the legislature intended, and
 it leads to absurd results. "[A]lthough we must give
 effect to the statute's plain and ordinary meaning, the
 intention of the legislature will prevail over a literal
 interpretation of the statute that leads to an absurd
 result." Cisneros v. Elder, 2022 CO 13M, ¶
 21, 506 P.3d 828, 832 (quoting AviComm, Inc. v. Colo.
 Pub. Utils. Comm'n, 955 P.2d 1023, 1031) (Colo.
 1998)).
 
 
          ¶49
 The majority's interpretation of "testimony" in
 section 18-6-401(3) flies in the face of our jurisprudence.
 We've long interpreted the physician-patient privilege to
 encompass both testimony and medical records.[1] Significantly,
 the
 
 20
 
 title of the privilege statute refers to "[w]ho may not
 testify without consent" and makes no mention
 of medical records. § 13-90-107 (emphasis
 added). Further, and equally significant, subsection (1)(d)
 of that statute (the physician-patient privilege) refers to
 the prohibition against a physician being
 "examined" without a patient's consent and
 likewise makes no mention of medical records. §
 13-90-107(1)(d) ("A physician . . . shall not be
 examined without the consent of his or her patient
 as to any information acquired in attending the patient that
 was necessary to enable him or her to prescribe or act for
 the patient ...." (emphasis added)). Yet, neither the
 title of the privilege statute nor the language describing
 the physician-patient privilege has altered our understanding
 of the scope of that privilege as encompassing both testimony
 and medical records.
 
 
          ¶50
 Just last term, we observed that the physician-patient
 privilege isn't limited to "testimony"; it also
 "sweeps in" the information learned during pretrial
 discovery, including information contained in medical
 records. Trenshaw v. Jennings, 2025 CO 23, ¶
 26, 568 P.3d 413, 421. And this was no breaking news. Rather,
 it was merely recognition of a longstanding principle rooted
 in decadesold precedent. Id. at ¶¶ 25-26,
 568 P.3d at 421 (first citing Clark v. Dist. Ct.,
 668 P.2d 3, 11 (Colo. 1983);
 
 21
 
 and then citing Hoffman v. Brookfield Republic,
 Inc., 87 P.3d 858, 861 (Colo. 2004)). Thus, a review of
 our case law reveals that we've never held, or even
 suggested, that the protective umbrella of the
 physician-patient privilege covers only testimony and leaves
 medical records exposed.
 
 
          ¶51
 Notably, the majority acknowledges that the physician-patient
 privilege shields both testimony and medical records. Maj.
 op. ¶ 28 (citing Trenshaw, ¶ 26, 568 P.3d
 at 421). But the majority doesn't explain its
 inconsistent treatment of, on the one hand,
 "testify" in section 13-90-107 and
 "examined" in subsection (1)(d) of that statute,
 and on the other, "testimony" in section
 18-6-401(3). Instead, the majority completely ignores the
 elephant in the room: It doesn't so much as acknowledge
 our time-honored interpretation of "testify" and
 "examined" in section 13-90-107. Absent some
 indication that it's what the legislature intended, we
 may not construe the words "testify" and
 "examined" in the privilege statute (section
 13-90-107) as applying to both testimony and medical records,
 while simultaneously interpreting the word
 "testimony" in the child abuse exception to that
 privilege (section 18-6-401(3)) as applying only to
 testimony.
 
 
          ¶52
 There is no basis to believe that in enacting section
 18-6-401(3) the legislature intended a partial exception to
 the physician-patient privilege-one that applies to only part
 of the privilege (the part covering testimony, not the part
 covering medical records). This is particularly the case
 given that (1) the legislature used
 
 22
 
 almost identical language to define the privilege and the
 exception, and (2) although the legislature has amended the
 privilege statute numerous times in the last four decades, it
 has never taken steps to express any disagreement with our
 broad interpretation of "testify" and
 "examined" as embracing both testimony and medical
 records. See Bonde v. People, 2025 CO 24, ¶ 14,
 569 P.3d 109, 113 (recognizing that "the legislature is
 presumed, by virtue of its action in amending a previously
 construed statute without changing the portion that was
 construed, to have accepted and ratified the prior judicial
 construction" (quoting People v. Swain, 959
 P.2d 426, 430-31 (Colo. 1998)).
 
 
          ¶53
 Moreover, cabining the exception as the majority does will
 lead to absurd results. In construing a statute, we must
 "avoid an interpretation that leads to an absurd
 result." State v. Nieto, 993 P.2d 493, 501
 (Colo. 2000).
 
 
          ¶54
 Recall that the majority does not dispute that the medical
 records in question here are "material evidence in a . .
 . criminal prosecution in this state." Maj. op. ¶
 25 (quoting § 16-3-301.1(2)(e), C.R.S. (2025)). Indeed,
 in many child abuse cases, the child victim's medical
 records constitute the most material evidence in the
 case.
 
 
          ¶55
 After today's decision, how are the People supposed to
 prosecute a child abuse case like this one involving a single
 parent who is suspected of a child victim's death? Soron
 has refused to provide consent to allow the People access to
 pertinent medical records. True, the People will still be
 able to obtain the
 
 23
 
 treating physician's testimony at trial. But how do the
 People make decisions regarding charges, plea bargaining, and
 trial strategy before hearing what the physician has to say
 on the stand midtrial? Additionally, how do the People comply
 with their Crim. P. 16 obligations vis-a-vis such testimony?
 The availability of a physician's attestations in an
 affidavit certainly doesn't solve the problem. Will the
 People have to rely on an affiant physician to figure out
 what is relevant and important to their case from the
 records? Will the People likewise have to rely on an affiant
 physician's memory of the contents of the records for
 purposes of accuracy and comprehensiveness? Lastly, how will
 an affiant physician know the elements of the charged crime
 that must be proven beyond a reasonable doubt or what's
 admissible under the applicable rules of evidence?
 
 
          ¶56
 Given these conundrums, the child abuse exception to the
 protective mantle of the physician-patient privilege must
 reach medical records, not just testimony. To my mind, there
 is no support for the majority's decision to elevate form
 over substance and hold that in child abuse prosecutions a
 treating physician may provide testimony in an affidavit or
 at trial about the contents of relevant medical records, but
 the records themselves must remain off-limits because they
 are protected by the physician-patient privilege.
 
 
          ¶57
 I understand that the factual allegations against Soron make
 this case an outlier. But today's far-reaching opinion
 applies just the same to any other child
 
 24
 
 abuse case resulting in serious bodily injury or death. And
 if the defendant in such a case is a single parent, the
 People may have a nearly impossible time obtaining justice
 for the child victim. No one believes that this is what the
 legislature intended. It isn't.
 
 
          ¶58
 I am very concerned that today's opinion will
 inadvertently throw a monkey wrench into the prosecution of a
 large swath of child abuse cases. Mindful that children are
 the most vulnerable and defenseless members of our society,
 the General Assembly enacted the exception in section
 18-6-401(3) because it realized that a defendant could
 improperly use the physician-privilege as a sword to hamper
 the prosecution of child abuse charges. Today's opinion
 not only fails to give effect to the legislature's intent
 in passing section 18-6-401(3), it unwittingly cuts the legs
 out from under it.
 
 
          ¶59
 Because the district court erred, and because the
 majority's strained interpretation of section 18-6-401(3)
 endorses this error, I respectfully dissent in part. I
 cannot, in good conscience, join the part of the majority
 opinion that upholds the district court's denial of the
 People's request for relevant medical records.
 
 
          ¶60
 For the foregoing reasons, I respectfully concur in part and
 dissent in part. I would reverse the district court's
 order in its entirety.
 
 
 ---------
 
 
 Notes:
 
 
 [1] Like the majority, when I discuss
 either a physician's testimony or a patient's medical
 records in relation to section 13-90-107(1)(d) or section
 18-6-401(3), I mean privileged information contained
 within such testimony or records. (The distinction between
 privileged and unprivileged information in a physician's
 testimony or a patient's medical records is laid out in
 the majority opinion, Maj. op. ¶ 29, so I don't
 repeat it here.)
 
 
 ---------