The summaries of the Colorado Court of Appeals published opinions
constitute no part of the opinion of the division but have been prepared by
the division for the convenience of the reader.  The summaries may not be
cited or relied upon as they are not the official language of the division.
Any discrepancy between the language in the summary and in the opinion
should be resolved in favor of the language in the opinion.

SUMMARY
June 25, 2026

**2026 COA 53**

**No. 24CA1559, *People v. Crow* — Criminal Law — Wrongs to At-risk Adults — Person with Disability — Unable to Breathe Without Mechanical Assistance**

In this direct criminal appeal, a division of the court of appeals considers whether section 18-6.5-102(11)(c), C.R.S. 2025 — which deems an adult with a disability that renders them unable to breathe without mechanical assistance an "at-risk adult" in the context of crimes against at-risk persons — requires the prosecution to prove that the victim's disability is permanent rather than intermittent.  We conclude that the prosecution need not prove that the victim's disability is permanent; rather, it need only prove that the victim's disability rendered the victim unable to breathe without mechanical assistance on the date of the offense.

The division also considers whether the trial court erred by using the 2022 model criminal jury instruction on reasonable

doubt.  The majority follows the analysis set forth in *People v. Casey Simms*, 2026 COA 51, ¶¶ 15-33, and concludes that the court did not err.  The dissent would hold that, consistent with the dissent's analysis in *Casey Simms*, ¶¶ 106-112 (Taubman, J., concurring in part and dissenting in part), the instruction's "real possibility" language impermissibly lowered the prosecution's burden of proof.

Because the majority concludes that the court's instructions did not lower the prosecution's burden of proof and that the evidence was sufficient to demonstrate the victim was "at-risk" under section 18-6.5-102(11)(c), the majority affirms the judgment of conviction and the court's application of the sentence enhancer.

COLORADO COURT OF APPEALS 2026 COA 53

Court of Appeals No. 24CA1559
El Paso County District Court No. 23CR2555
Honorable David Shakes, Judge

The People of the State of Colorado,

Plaintiff-Appellee,

v.

Jon Claude Crow,

Defendant-Appellant.

JUDGMENT AFFIRMED

Division III
Opinion by JUDGE MOULTRIE
Bernard*, J., concurs
Taubman*, J., concurs in part and dissents in part

Announced June 25, 2026

Philip J. Weiser, Attorney General, Josiah Beamish, Assistant Attorney
General, Denver, Colorado, for Plaintiff-Appellee

Megan A. Ring, Colorado State Public Defender, Christina Van Wagenen,
Deputy State Public Defender, Denver, Colorado, for Defendant-Appellant

*Sitting by assignment of the Chief Justice under provisions of Colo. Const. art.
VI, § 5(3), and § 24-51-1105, C.R.S. 2025.

¶ 1    Defendant, Jon Claude Crow, appeals the judgment of conviction entered after a jury verdict found him guilty of third degree assault of an at-risk person.  He contends that (1) the trial court erred by instructing the jury using the 2022 model criminal jury instruction on reasonable doubt; and (2) the evidence presented at trial was insufficient to prove that the victim was an "at-risk person," such that the court was required to apply a sentence enhancer to his conviction.

¶ 2    Our decision is split regarding Crow's first contention of error. Consistent with the analysis in *People v. Casey Simms*, 2026 COA 51, the majority agrees that the trial court didn't err by instructing the jury using the 2022 model instruction on reasonable doubt.  As in *Casey Simms*, the dissent concludes that the instruction impermissibly lowered the prosecution's burden of proof.  *Id.* ¶¶ 106-112 (Taubman, J., concurring in part and dissenting in part).

¶ 3    Resolving Crow's second contention requires us to consider whether section 18-6.5-102(11)(c), C.R.S. 2025 — which deems an adult with a disability that renders them unable to breathe without mechanical assistance an "at-risk adult" in the context of crimes

against at-risk persons — requires the prosecution to prove that the victim's disability is permanent rather than intermittent.  We conclude that the prosecution need not prove that the victim's disability is permanent; rather, it need only prove that the victim's disability rendered the victim unable to breathe without mechanical assistance on the date of the offense.  And because we conclude that the prosecution presented sufficient evidence from which the jury could have concluded that the at-risk victim was unable to breathe without mechanical assistance on the date of the offense, we affirm the judgment of conviction and the court's application of the sentence enhancer.

## I.      Background

¶ 4      One day in June 2023, the victim called the police to report that Crow — her then boyfriend — had hit her the night before.  Two police officers went to the couple's home to respond to the call.  One officer brought Crow outside to speak with him, while the other went inside to check on the victim.

¶ 5      When the officer encountered the victim, she was wearing a nasal cannula — a "very long cord that ran all the way through the house" to deliver supplemental oxygen.  The victim told the officer

2

that Crow had backhanded her in the ribs during an argument the night before and that she was experiencing severe pain with each breath. Paramedics took the victim to the hospital, where doctors discovered that she had three broken ribs.

¶ 6 Crow, for his part, denied hitting the victim and suggested that she might have fallen, but he couldn't give any details about how she fell.

¶ 7 The People charged Crow with second degree assault of an at-risk person and the lesser included offense of third degree assault of an at-risk person. At trial, the victim testified that she could recall almost nothing about the night of the assault or the day she called the police, but she specifically denied needing supplemental oxygen on either day. She explained that her oxygen use was "due to having emphysema," which she developed "after smoking for [thirty-seven] years" and which "causes a hard time breathing."

¶ 8 The prosecutor introduced the victim's statements to the police through testimony and body camera footage from the two responding officers. The jury ultimately found Crow guilty of third degree assault and — through a special interrogatory — found that

the victim was an "at-risk person," which the jury instructions defined as an adult who was "unable to breathe without mechanical assistance." The court imposed a three-year probation sentence.

¶ 9 Because Crow's challenge to the 2022 model criminal jury instruction on reasonable doubt would, if sustained, require reversal of his conviction, we address it first.

## II. Reasonable Doubt Jury Instruction

¶ 10 Crow contends that the trial court's use of the 2022 model reasonable doubt instruction impermissibly lowered the prosecution's burden of proof, undercut the presumption of innocence, and shifted the burden of proof to him. We disagree.

## A. Additional Background

¶ 11 Before 2022, the Colorado Model Criminal Jury Instructions defined reasonable doubt as follows:

> Reasonable doubt means a doubt based upon reason and common sense which arises from a fair and rational consideration of all of the evidence, or the lack of evidence, in the case. It is a doubt which is not a vague, speculative or imaginary doubt, but such a doubt as would cause reasonable people to hesitate to act in matters of importance to themselves.

COLJI-Crim. E:03 (2021).

4

¶ 12    In 2022, the model instruction was substantially revised:

> Every person charged with a crime is presumed innocent.  This presumption of innocence remains with the defendant throughout the trial and should be given effect by you unless, after considering all the evidence, you are convinced that the defendant is guilty beyond a reasonable doubt.
>
> The burden of proof in this case is upon the prosecution.  The prosecution must prove to the satisfaction of the jury beyond a reasonable doubt the existence of each and every element necessary to constitute the crime charged.  This burden requires more than proof that something is highly probable, but it does not require proof with absolute certainty.
>
> Proof beyond a reasonable doubt is proof that leaves you firmly convinced of the defendant's guilt.  If you are firmly convinced of the defendant's guilt, then the prosecution has proven the crime charged beyond a reasonable doubt.  But if you think there is a real possibility that the defendant is not guilty, then the prosecution has failed to prove the crime charged beyond a reasonable doubt.
>
> After considering all the evidence, if you decide the prosecution has proven each of the elements of a crime charged beyond a reasonable doubt, you should find the defendant guilty of that crime.
>
> After considering all the evidence, if you decide the prosecution has failed to prove any one or more of the elements of a crime charged

> beyond a reasonable doubt, you should find the defendant not guilty of that crime.

COLJI-Crim. E:03 (2022).

¶ 13    Over Crow's objection, the court instructed the jury on reasonable doubt using the 2022 version of the model instruction rather than the prior version.

### B.    Standard of Review and Applicable Law

¶ 14    The trial court must properly instruct the jury on the reasonable doubt standard. *Tibbels v. People*, 2022 CO 1, ¶ 25. Whether the court's instruction lowered the prosecution's burden of proof is a question of law that we review de novo. *Id.* at ¶ 22. "An instruction that lowers the prosecution's burden of proof below reasonable doubt constitutes structural error and requires automatic reversal." *Johnson v. People*, 2019 CO 17, ¶ 8.

### C.    The Trial Court Didn't Err by Giving the 2022 Model Reasonable Doubt Instruction

¶ 15    Crow contends that the trial court made four errors by instructing the jury using the 2022 model reasonable doubt instruction. Specifically, he contends that the court

- didn't instruct the jury that it could consider the lack of evidence supporting the prosecution's case;

6

- didn't inform the jury that a doubt is reasonable if it "would cause reasonable people to hesitate to act in matters of importance to themselves";

- framed reasonable doubt as requiring a "real possibility that the defendant is not guilty"; and

- instructed the jury that a reasonable doubt is one that leaves the jury "firmly convinced of the defendant's guilt."

While Crow's appeal was pending, three divisions of this court considered similar challenges to the 2022 model reasonable doubt instruction. *See People v. Melara*, 2025 COA 48, ¶¶ 22-23; *People v. Schlehuber*, 2025 COA 50, ¶¶ 16-17; *People v. Berumen*, 2025 COA 93, ¶ 14.[1] In all three cases, the majority opinions concluded that

---

[1] *People v. Melara*, 2025 COA 48, and *People v. Schlehuber*, 2025 COA 50, were announced before Crow filed his reply brief; *People v. Berumen*, 2025 COA 93, was decided after this case was fully briefed. The Colorado Supreme Court granted certiorari in *Teran-Sanchez v. People*, No. 25SC148, 2025 WL 2506067 (Colo. Sep. 2, 2025) (unpublished order), to address "[w]hether the trial court's jury instruction on burden of proof and reasonable doubt, based on the 2023 Model Criminal Jury Instruction . . . violated [the defendant's] federal and constitutional rights to due process and a fair trial." The 2023 version of the model instruction includes the "lack of evidence" language but is otherwise identical to the 2022 model instruction. *See* COLJI-Crim. E:03 cmt. 8 (2023) ("In 2023, the Committee added the final sentence to the instruction's first paragraph regarding evidence or lack of evidence.").

the 2022 model instruction doesn't lower the prosecution's burden of proof. *Melara*, ¶ 24; *Schlehuber*, ¶ 2; *Berumen*, ¶¶ 29-30, 33.

¶ 16    This panel considered substantially similar contentions about the 2022 model reasonable doubt instruction in *Casey Simms*, ¶¶ 15-33. Agreeing with the majority opinions in *Melara*, *Schlehuber*, and *Berumen*, the majority in *Casey Simms* rejected the defendant's assertions that the 2022 model reasonable doubt instruction impermissibly lowered the prosecution's burden of proof. We adopt the reasoning of the *Casey Simms* majority here and reject Crow's assertions of error. Reviewing the instructions as a whole, we conclude that they appropriately informed the jury of the prosecution's burden and the concept of reasonable doubt, including by informing the jury that the burden of proof was "upon the prosecution" and that the "prosecution must prove to the satisfaction of the jury beyond a reasonable doubt the existence of each and every element necessary to constitute the crime charged." COLJI-Crim. E:03 (2022); *see Melara*, ¶ 30; *Schlehuber*, ¶ 35; *Berumen*, ¶¶ 22, 28; *see also Victor v. Nebraska*, 511 U.S. 1, 5 (1994) ("[S]o long as the court instructs the jury on the necessity that the defendant's guilt be proved beyond a reasonable doubt, the

8

Constitution does not require that any particular form of words be used in advising the jury of the government's burden of proof." (citation omitted)).

### III.    Sufficiency of the Evidence

¶ 17     Crow contends that insufficient evidence supported the jury's finding that the victim was an at-risk person.  We aren't persuaded.

### A.    Standard of Review and Applicable Law

¶ 18     We review the record de novo to determine whether the evidence was sufficient both in quantity and quality to sustain a conviction.  *Clark v. People*, 232 P.3d 1287, 1291 (Colo. 2010).  To determine whether the prosecution presented sufficient evidence to support a conviction, we consider "whether the relevant evidence, both direct and circumstantial, when viewed as a whole and in the light most favorable to the prosecution, is substantial and sufficient to support a conclusion by a reasonable mind that the defendant is guilty of the charge beyond a reasonable doubt." *Id.* (quoting *People v. Bennett*, 515 P.2d 466, 469 (Colo. 1973)).  In doing so, we give the prosecution the benefit of all reasonable inferences supported by a logical connection between the facts established and the conclusion inferred.  *Id.* at 1292.

¶ 19    In determining whether sufficient evidence supports the verdict, we recognize that "it is the jury which should decide the difficult questions of witness credibility and the weight to be given to conflicting items of evidence," *People v. Gibson*, 203 P.3d 571, 575 (Colo. App. 2008) (quoting *People v. Brassfield*, 652 P.2d 588, 592 (Colo. 1982)), and we don't sit as a thirteenth juror to reassess witness credibility or to reweigh the evidence presented, *see Clark*, 232 P.3d at 1291-92; *People v. Franklin*, 645 P.2d 1, 4 (Colo. 1982) ("The determination of the credibility of witnesses is a matter solely within the province of the jury.").

¶ 20    Article 6.5 of Colorado's Criminal Code governs wrongs committed against at-risk adults and imposes more severe penalties for certain crimes when the victim is determined to be "at-risk." *See* §§ 18-6.5-101 to -108, C.R.S. 2025; *People v. McKinney*, 99 P.3d 1038, 1041 (Colo. 2004). An at-risk person provision is a sentence enhancer that must be proved beyond a reasonable doubt. *See People in Interest of B.D.*, 2020 CO 87, ¶ 21; *Dorsey v. People*, 2023 CO 51, ¶ 29 (unless a sentence-enhancing fact that increases the sentence for a crime beyond the statutory maximum relates to a

prior conviction, the fact must be proved to a jury beyond a reasonable doubt).

> B.    The Jury Was Presented with Sufficient Evidence that the Victim Was an At-Risk Person

¶ 21    Third degree assault is ordinarily a class 1 misdemeanor, § 18-3-204(3), C.R.S. 2025, but it's a class 6 felony when the victim is an "at-risk person," § 18-6.5-103(3)(c), C.R.S. 2025.  As relevant here, an "at-risk person" is defined as an adult who is "unable to breathe without mechanical assistance."  § 18-6.5-102(2), (4.5), (11)(c).

¶ 22    Crow asserts that there was insufficient evidence to apply the sentence enhancer.[2]  He argues that, as a matter of statutory interpretation, section 18-6.5-102(11)(c) doesn't "encompass intermittent shortness of breath that causes a condition where a victim sometimes needs mechanical assistance to breathe, or the victim is unable to breathe well without mechanical assistance."  Instead, he asserts that section 18-6.5-102(11)(c) requires that the

---

[2] Crow doesn't argue that the evidence was insufficient to support a conviction on the underlying offense of third degree assault.  *See Armintrout v. People*, 864 P.2d 576, 580 (Colo. 1993) ("A defendant still may be convicted of the underlying offense without any proof of the sentence enhancer . . . .").

disability that renders a victim unable to breathe without mechanical assistance "must be permanent or at least present at the time of the offense."

¶ 23    In support of the interpretation he advances, Crow argues that reading section 18-6.5-102(11)(c) in context with the other conditions enumerated in section 18-6.5-102(11) supports the conclusion that a person's inability to breathe without mechanical assistance must be permanent because the other listed "conditions are permanent, either explicitly or by their nature," and "none of the other disabilities listed . . . describes an intermittent condition." *See* § 18-6.5-102(2), (11)(a)-(h) (enumerating the conditions that make someone a "[p]erson with a disability" for purposes of determining whether a victim is an "at-risk adult"). Crow cites no authority for the sweeping and conclusory assertion that the enumerated conditions — which include mental health disorders and legal blindness — "are permanent, either explicitly or by their nature."

¶ 24    Moreover, nothing in the plain language of section 18-6.5-102(11)(c) requires a victim to have a disability that permanently prevents them from breathing without mechanical

assistance for the sentence enhancer to apply. *See B.D.,* ¶ 9 (discerning legislative intent by beginning with the statutes' plain language). Indeed, the *only* portion of the statute that indicates that a victim's disability must be permanent is section 18-6.5-102(11)(a), which applies to a person who is "impaired because of the . . . permanent loss of use of a hand or foot or because of . . . the permanent impairment of vision of both eyes to such a degree as to constitute virtual blindness." Thus, it's clear that the General Assembly knew how to use the word "permanent" in relation to certain conditions but chose not to do so with respect to a victim's inability to breathe without mechanical assistance. *See People v. Duncan,* 2023 COA 122, ¶ 13. And we may not add words to the statute. *People v. Soron,* 2026 CO 3, ¶ 23. We therefore reject Crow's assertion that a victim's inability to breathe without mechanical assistance must be caused by a permanent disability.

¶ 25 Nonetheless, we agree with Crow that the victim's disability must be present at the time of the alleged offense. *See People v. Davis,* 935 P.2d 79, 86 (Colo. App. 1996) (concluding that when the evidence established the victim was over the age of sixty *at the time*

13

*of the offense*, the victim was an at-risk adult under a prior version of section 18-6.5-102); *cf. People v. Leske*, 957 P.2d 1030, 1039 (Colo. 1998) (holding that a conviction for sexual assault by one in a position of trust doesn't require proof that the victim was less than fifteen years old at the time of the offense but that such proof may enhance the sentence). However, as we next discuss, we disagree that the evidence was insufficient to prove that the victim's disability rendered her unable to breathe without mechanical assistance at the time that Crow assaulted her.

¶ 26 Crow argues that the evidence was insufficient because the victim "testified that she *did not* require mechanical assistance to breathe on . . . the date of the offense, and no evidence challenged her testimony on that point." And he argues that evidence of her "intermittent shortness of breath" was insufficient to demonstrate that she was incapable of breathing without mechanical assistance. Thus, he asserts that the victim was not "at-risk" as defined in section 18-6.5-102(11)(c).

¶ 27 We aren't persuaded.

¶ 28 The jury was permitted to "draw reasonable inferences from both direct and circumstantial evidence," *People v. Donald*, 2020 CO

24, ¶ 27, so long as those inferences were "supported by a 'logical and convincing connection between the facts established and the conclusion inferred,'" *People v. Perez*, 2016 CO 12, ¶ 25 (quoting *People v. Gonzales*, 666 P.2d 123, 128 (Colo. 1983)). And the sentence enhancer can be sustained based solely on those reasonable inferences. *See People v. Chase*, 2013 COA 27, ¶ 50 ("If there is evidence upon which one may reasonably infer an element of the crime, the evidence is sufficient to sustain that element.").

¶ 29 The evidence before the jury included the following:

- The victim was wearing a nasal cannula when the police arrived the day after the assault, and she mentioned to officers that "she was on oxygen." The tubing was "very long" and "allowed her to go through the house."

- An officer's body camera footage showed a large oxygen tank attached to a stand with wheels near the door of the home.

- The victim used supplemental oxygen while on the witness stand.

- The victim testified that she developed emphysema "after smoking for [thirty-seven] years" and that she had "a

hard time breathing, hence, the oxygen." She also testified that her rib injury wasn't the reason she needed supplemental oxygen.

- The victim recalled that she and Crow drank up to a "fifth" of alcohol right before the altercation, but she couldn't recall the incident itself, calling the police the next day, or much of what occurred after she was transported to the hospital.

We conclude that this evidence sufficed for a rational jury to infer beyond a reasonable doubt that the victim had a persistent need for supplemental oxygen — i.e., that she was "unable to breathe without mechanical assistance" — when Crow hit her the day before. In particular, the victim had a nasal cannula set up so she could receive supplemental oxygen throughout her home and had a large portable oxygen tank near the door. This evidence, coupled with her need for supplemental oxygen roughly five months later at trial, could have allowed the jury to reasonably infer that her oxygen use wasn't limited to infrequent episodes of shortness of breath that weren't present when the assault occurred. *See Donald*, ¶ 27.

¶ 30     We recognize that the victim testified she didn't need supplemental oxygen on the day Crow hit her.  But evidence is not rendered insufficient just because it is conflicting.  *See People v. Moya*, 899 P.2d 212, 218 (Colo. App. 1994).  And as the fact finder, the jury was free to — and evidently did — find this portion of the victim's testimony not credible.  *See People v. Kessler*, 2018 COA 60, ¶ 12 ("[A] fact finder is not required to accept or reject a witness's testimony in its entirety; it may believe all, part, or none of a witness's testimony . . . .").  Indeed, the jury had good reason to reject some of her testimony, as she also said that she didn't need supplemental oxygen on the day she called the police — a claim refuted by the testimony of both police officers and by body camera footage.  We may not substitute the jury's assessment of witness credibility with our own.  *See People v. McIntier*, 134 P.3d 467, 471 (Colo. App. 2005) ("[I]t is the fact finder's function in a criminal case to . . . resolve conflicts, testimonial inconsistencies, and disputes in the evidence."); *Clark*, 232 P.3d at 1293.

¶ 31     Viewing the evidence in the light most favorable to the prosecution, as we must, we conclude that a reasonable fact finder could have concluded that the victim was an at-risk person.

Accordingly, we affirm both the judgment of conviction and the application of the sentence enhancer.

## IV. Disposition

¶ 32 The judgment is affirmed.

JUDGE BERNARD concurs.

JUDGE TAUBMAN concurs in part and dissents in part.

JUDGE TAUBMAN, concurring in part and dissenting in part.

I concur with Part III of the majority opinion because I agree that the plain language of section 18-6.5-102(11)(c), C.R.S. 2025, does not require that the disability that renders an adult unable to breathe without mechanical assistance is permanent so long as the person's disability is present at the time of the offense, and I agree that the evidence here was sufficient to support the court's application of the "at-risk person" sentence enhancer in section 18-6.5-103, C.R.S. 2025.

However, consistent with my stance on this issue as articulated in *People v. Casey Simms*, 2026 COA 51, ¶¶ 106-112, I dissent from Part II.C because I believe that the third paragraph of the 2022 model criminal jury instruction on reasonable doubt impermissibly lowers the prosecution's burden of proof. *See* COLJI-Crim. E:03 (2022). I would therefore conclude that the court structurally erred by instructing the jury using that language, and Crow's conviction must be reversed. *See Johnson v. People*, 2019 CO 17, ¶ 8.