23CA1123 Peo v Spain 06-04-2026

COLORADO COURT OF APPEALS

---

Court of Appeals No. 23CA1123
City and County of Denver District Court No. 22CR770
Honorable Ericka F.H. Englert, Judge

---

The People of the State of Colorado,

Plaintiff-Appellee,

v.

Cameron T. Spain,

Defendant-Appellant.

---

JUDGMENT AFFIRMED

Division V
Opinion by JUDGE YUN
Lipinsky and Schutz, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced June 4, 2026

---

Philip J. Weiser, Attorney General, Carmen Moraleda, Senior Assistant
Attorney General, Denver, Colorado, for Plaintiff-Appellee

Megan A. Ring, Colorado State Public Defender, James S. Hardy, Deputy State
Public Defender, Denver, Colorado, for Defendant-Appellant

¶ 1     Cameron T. Spain appeals the judgment of conviction entered after a jury found him guilty of first degree murder.  He contends that the district court (1) violated his due process rights by improperly instructing the jury on reasonable doubt and (2) erroneously excluded evidence concerning the victim's toxicology report.  We affirm.

## I.     Background

¶ 2     The jury heard evidence that would support the following facts.

¶ 3     Spain shot the victim five times near the RV where Spain was living.  The below diagram illustrates the number and location of the victim's gunshot wounds:



1

The forensic pathologist testified that the victim died of gunshot wounds to the torso and the manner of death was homicide.

¶ 4       Police identified Spain as the shooter based on leads obtained at a nearby Salvation Army shelter, surveillance video from nearby businesses, and data from the ankle monitor that Spain wore at the time.  The video footage of the shooting is blurry, with the figures appearing small and indistinct.  However, one figure can be seen backing away, after which another figure wearing a headlamp fires a handgun at the retreating person.  Video footage from a different camera shows a figure wearing a headlamp riding away from the scene on a bicycle.

¶ 5       Five days after the shooting, police found Spain at his RV. They observed no injuries to his face — no scratches, cuts, bruises, or other signs of injury.  Police recovered a headlamp from the RV and a knife wrapped with yarn or string at the crime scene.  The victim's "DNA was on the knife," which was found "right next to his clothing and where he went down on the ground."

¶ 6       After his arrest, Spain told his cellmate he shot the victim after a drug deal went bad, saying that he became angry because the victim "said something or did something funny."  Spain also claimed

the victim struck him with a padlock on a chain before the shooting. (Police did not find a chain or padlock — other than the padlock on Spain's RV — at the crime scene.) Spain told his cellmate he had used a .45 caliber firearm that he later sold. He also said that after the shooting, he fled on his bicycle, called his girlfriend, and met her in an alley, where she advised him to burn his clothes.

¶ 7 At trial, defense counsel did not dispute that Spain was the shooter and asserted a self-defense theory. Defense counsel argued that the victim struck Spain in the face and threatened him with a knife. However, no testimony or other evidence indicated that the victim used a knife. At defense counsel's request, the court instructed the jury on the self-defense theory. The jury rejected this defense and convicted Spain of first degree murder after deliberation.

¶ 8 Spain now appeals.

## II. Jury Instructions

¶ 9 Spain contends that the district court reversibly erred by giving the 2022 model criminal jury instruction on reasonable

doubt because that instruction lowered the prosecution's burden of proof. We disagree.

### A. Applicable Facts

¶ 10    In 2022, the Model Criminal Jury Instructions Committee revised the model instruction for reasonable doubt. *People v. Melara*, 2025 COA 48, ¶ 12. In addition to modifying the reasonable doubt instruction, the committee combined it and the presumption of innocence instruction into a single new instruction. *See* COLJI-Crim. E:03 (2022).

¶ 11    Before the 2022 revision, the model reasonable doubt instruction read as follows:

> Reasonable doubt means a doubt based upon reason and common sense which arises from a fair and rational consideration of all of the evidence, or the lack of evidence, in the case. It is a doubt which is not a vague, speculative or imaginary doubt, but such a doubt as would cause reasonable people to hesitate to act in matters of importance to themselves.
>
> If you find from the evidence that each and every element of a crime has been proven beyond a reasonable doubt, you should find the defendant guilty of that crime. If you find from the evidence that the prosecution has failed to prove any one or more of the elements of a crime beyond a reasonable doubt, you

4

should find the defendant not guilty of that crime.

COLJI-Crim. E:03 (2021).

¶ 12     At trial, defense counsel tendered the pre-2022 instruction for the burden of proof and definition of reasonable doubt and objected to the 2022 instruction. Defense counsel argued that the 2022 instruction lowered and shifted the burden of proof and "does not maintain the burden fully with the prosecution."

¶ 13     Over defense counsel's objections, the district court gave the 2022 instruction at trial:

> Every person charged with a crime is presumed innocent. This presumption of innocence remains with the defendant throughout the trial and should be given effect by you unless, after considering all the evidence, you are convinced that the defendant is guilty beyond a reasonable doubt.
>
> The burden of proof in this case is upon the prosecution. The prosecution must prove to the satisfaction of the jury beyond a reasonable doubt the existence of each and every element necessary to constitute the crime charged. This burden requires more than proof that something is highly probable, but it does not require proof with absolute certainty.
>
> Proof beyond a reasonable doubt is proof that leaves you firmly convinced of the defendant's

guilt. If you are firmly convinced of the defendant's guilt, then the prosecution has proven the crime charged beyond a reasonable doubt. But if you think there is a real possibility that the defendant is not guilty, then the prosecution has failed to prove the crime charged beyond a reasonable doubt.

After considering all the evidence, if you decide the prosecution has failed to prove any one or more of the elements of a crime charged beyond a reasonable doubt, you should find the defendant not guilty of that crime.

After considering all the evidence, if you decide the prosecution has proven each of the elements of a crime charged beyond a reasonable doubt, you should find the defendant guilty of that crime.[1]

B. Standard of Review and Applicable Law

¶ 14 We review de novo whether a district court accurately instructed the jury on the law. *Johnson v. People*, 2019 CO 17, ¶ 8.

¶ 15 The Due Process Clause of the United States Constitution "protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *Tibbels v. People*, 2022 CO 1, ¶ 23 (quoting *In re Winship*, 397 U.S. 358, 364 (1970)).

---

[1] In the pattern instruction, this paragraph precedes the previous one. *See* COLJI-Crim. E:03 (2022).

¶ 16   The district court must properly instruct the jury on the reasonable doubt standard. *Id.* at ¶ 25. Although the court has some flexibility in how it defines reasonable doubt, an instruction that lowers the prosecution's burden of proof below that standard constitutes structural error requiring automatic reversal. *People v. Schlehuber*, 2025 COA 50, ¶ 13.

¶ 17   To determine whether an instruction impermissibly lowered the burden of proof, we apply a "functional test, asking whether there is a reasonable likelihood that the jury understood [the] contested instruction, in the context of the instructions as a whole and the trial record, to allow a conviction based on a standard lower than beyond a reasonable doubt." *Tibbels*, ¶ 36. The district court has broad discretion to determine the form and style of instructions as long as they properly inform the jury of the law. *McDonald v. People*, 2021 CO 64, ¶ 54. Thus, there is no due process violation if the instructions as a whole correctly inform the jury of the prosecution's burden to prove the charged offense beyond a reasonable doubt. *Johnson*, ¶ 14.

7

## C. Analysis

¶ 18    Like the defendant in *Schlehuber,* Spain challenges four aspects of the 2022 model jury instruction given by the district court: (1) the instruction did not inform the jury that it could consider the "lack of evidence" supporting the prosecution's case; (2) it omitted the "hesitate to act" phrase found in the previous version of the reasonable doubt instruction; (3) it equated reasonable doubt with "a real possibility that the defendant is not guilty"; and (4) it used the phrase "firmly convinced" in contrast to "real possibility" to define proof beyond a reasonable doubt.[2] *Schlehuber,* ¶ 16.

¶ 19    We first reject Spain's argument that removing the "lack of evidence" language from the 2022 model instruction lowered or shifted the burden of proof or undermined the presumption of innocence.  Three divisions of this court have concluded that removing the "lack of evidence" instruction from the 2022 model

---

[2] Spain also asserts that the cumulative effect of these errors lowered and shifted the prosecution's burden of proof.  *See People v. Schlehuber,* 2025 COA 50, ¶ 35.  For the same reasons we conclude that none of the claimed errors individually lowered the burden of proof, we conclude they did not do so cumulatively.  *See id.*

8

instruction did not lower the prosecution's burden of proof. *Schlehuber*, ¶ 20; *Melara*, ¶ 24; *People v. Berumen*, 2025 COA 93, ¶ 33. And contrary to Spain's assertion, while the *Melara* division stated that a district court "should inform the jury, as part of the reasonable doubt instruction, that it may consider the lack of evidence in the case," the omission of the "lack of evidence" language did not alter the division's conclusion that the 2022 instruction "did not impermissibly lower the prosecution's burden of proof." *Melara,* ¶ 24. Further, the return of "lack of evidence" in the 2023 model instruction does not mean that its omission from the 2022 model instruction "unconstitutionally lower[ed] the prosecution's burden of proof below the reasonable doubt standard." *Schlehuber,* ¶¶ 18 n.2, 25.

¶ 20 Moreover, Spain's argument that, without the "lack of evidence" language, the jury had no guidance about how to address evidentiary gaps in the prosecution's case does not withstand scrutiny when the instruction is read as a whole. *Id.* at ¶¶ 19-23. As the *Schlehuber* division explained, the 2022 model instruction does not preclude the jury from considering the prosecution's lack of evidence because this concept is incorporated within the 2022

9

instruction. *Id.* at ¶ 22. The jury was told that "the prosecution bears the burden of proof" and that the defendant is "presumed innocent unless the prosecution meets its burden." *Id.* Additionally, the penultimate paragraph of the court's instruction told the jury to consider "all the evidence" when determining whether the prosecution met its burden of proof: "After considering all the evidence, if you decide the prosecution has failed to prove any one or more of the elements of a crime charged beyond a reasonable doubt, you should find the defendant not guilty of that crime." *Id.* at ¶ 9. Thus, the "fail[ure] to prove" language informed the jury that it should return a not guilty verdict if a material gap existed in the prosecution's proof.

¶ 21 Likewise, removing the "hesitate to act" language did not deprive the jury of necessary context to understand and apply the concept of reasonable doubt. We, like the *Schlehuber* division, do not see why it would be error to remove the "hesitate to act" language "so long as the instruction otherwise correctly defines the reasonable doubt standard." *Id.* at ¶ 28. The 2022 instruction defines reasonable doubt using the phrases "firmly convinced" and "real possibility." As the *Schlehuber* court explained, "'[F]irmly

10

convinced' correctly connotes a standard of 'near certitude' — one that is higher than 'highly probable' but stops short of absolute certainty" — and the phrase "real possibility" instructs the jury not to acquit "simply because it can conceive of *some* fanciful possibility that the defendant is not guilty." *Id.* at ¶ 31 (citation omitted). Like the *Schlehuber* division, we disagree that

> the two challenged phrases are "contradictory" or "create two different standards." Rather, the phrases work together to give the jury a complete picture of the reasonable doubt standard. The first — "firmly convinced — describes what it means to have no reasonable doubt. The second — "real possibility" — contrasts that with what it means to have a reasonable doubt. In other words, the jury could either be "firmly convinced" of Schlehuber's guilt (and find him guilty) or "think there is a real possibility" that Schlehuber was not guilty (and find him not guilty). Both things could not be true.

*Id.* at ¶ 33. We therefore conclude that the 2022 model instruction did not impermissibly lower the prosecution's burden to prove the charged offense beyond a reasonable doubt.

¶ 22     We are not persuaded otherwise by Spain's argument that referencing a "real possibility" that the defendant was not guilty lowered or shifted the burden of proof or undermined the

11

presumption of innocence. As the *Schlehuber* division concluded, equating reasonable doubt with a "real possibility" does not shift the burden to the defendant to prove that real possibility. *Id.* at ¶ 34. The court's instruction stated that if the jury believes "there is a real possibility that the defendant is not guilty, then the prosecution has failed to prove the crime charged beyond a reasonable doubt." Additionally, the instruction correctly informed the jury that it was required to presume that the defendant was innocent, that the burden of proof lay with the prosecution, and that the prosecution had to prove every element of the crime charged beyond a reasonable doubt.

¶ 23    We further disagree with Spain's contention that the "firmly convinced" language defines a level of certitude below the standard of beyond a reasonable doubt or permits a juror to be "firmly convinced" by impermissible, nonevidentiary considerations — such as counsel's arguments, personal bias, or a gut-level impulse. Three divisions of this court have already concluded that the "firmly convinced" phrase does not lower the burden of proof. *Melara,* ¶ 30; *Schlehuber,* ¶¶ 30-32; *Berumen,* ¶¶ 22-25. And Spain's related argument overlooks the court's other instructions. The

court also instructed the jury that it had to presume the defendant's innocence and that it had "received all of the evidence" it could "properly consider in deciding the case." Further, the instructions stated that the jury's verdict "must be made by applying the rules of law . . . to the evidence presented at trial" and could not be "influenced by sympathy, bias, or prejudice."

¶ 24 Because we conclude that the 2022 model jury instruction did not lower the prosecution's burden of proof, it follows that the district court did not violate Spain's due process rights by giving this instruction to the jury.

### III. Evidence of the Victim's Toxicology Report

¶ 25 Spain contends that the district court erred by excluding evidence concerning the victim's toxicology report. We are not persuaded.

### A. Applicable Facts

¶ 26 The prosecutor informed the court that the coroner's report showed that the victim had 440 nanograms of methamphetamine in his system. The prosecutor indicated that he had provided the coroner's report to defense counsel but argued that the portion of

13

the report discussing the victim's methamphetamine level should not be admitted into evidence.

¶ 27    The prosecutor argued that this information would invite speculation because no endorsed witness could testify about how the reported level of methamphetamine would have affected this victim or about the general effects of methamphetamine on users. The prosecutor therefore requested exclusion of the evidence, contending that any probative value was substantially outweighed by the risk of unfair prejudice and potential for jury confusion and speculation.

¶ 28    Defense counsel argued that the toxicology results in the coroner's report were relevant to Spain's self-defense theory and asserted that at least one endorsed witness — a homeless outreach coordinator — could offer anecdotal testimony about observing individuals on methamphetamine.  When the court asked whether this witness would testify about the victim's condition, counsel admitted that she could not, as she lacked personal knowledge of the victim's behavior while under the influence of methamphetamine.

¶ 29    Defense counsel nonetheless argued that "it would be very unlikely for a person in [the coordinator's] capacity in Denver to have never come across an individual [who] they later learned to be on methamphetamine" and that a methamphetamine expert witness was unnecessary because multiple witnesses could testify about "how people have interacted with them in the past, being on methamphetamine."

¶ 30    In addition, counsel contended that the victim's methamphetamine level was relevant to the forensic pathologist's testimony regarding "how he arrived at his conclusion in his expert opinion that this was a homicide" and whether it was possible the victim instead "died as a result of his methamphetamine intoxication."

¶ 31    The prosecutor countered that defense counsel was speculating: The outreach coordinator had not been endorsed as an expert and therefore could not testify generally about methamphetamine, and she could not offer a lay opinion as to whether the victim appeared to be under the influence because she was not present at the shooting.  The prosecutor further argued that the defense could not "tie the numbers here in the [toxicology]

report to anything" — specifically, there was no basis to determine what the numbers meant, whether this was the victim's first or fiftieth time using methamphetamine, or how long methamphetamine "stays in the body." In sum, the prosecutor concluded, the information would lead the jury to speculate that the victim had attacked Spain because the victim was under the influence, despite no evidence supporting that inference.

¶ 32    The district court denied Spain's request to admit the toxicology results, concluding that the victim's methamphetamine level was irrelevant under CRE 401 and 402 and that any probative value was outweighed by the danger of confusing the jury about the relevant issues. *See* CRE 403.

¶ 33    The court also relied on *People v. Delaney*, 620 P.2d 44, 45-46 (Colo. App. 1980), in which the division concluded that the trial court did not abuse its discretion by excluding the manslaughter victim's blood alcohol and narcotics concentration when the defense "made no effort to show how such substances might have affected the victim's behavior . . . on the night in question." Similarly, the district court here found that no witnesses could testify about the specific effects of the drugs on the victim the night of the shooting,

whether the victim was a heavy user, or whether the amount of methamphetamine could have caused him to act aggressively or violently.

### B. Applicable Law and Standard of Review

¶ 34    "The Constitution guarantees a criminal defendant a meaningful opportunity to present a complete defense." *People v. Salazar*, 2012 CO 20, ¶ 17. However, this right is not absolute; it guarantees "only that the accused be permitted to introduce all relevant and admissible evidence." *Id.*; *see also People v. Cline*, 2022 COA 135, ¶ 77 (explaining that the right to present a defense is subject to compliance with the rules of evidence).

¶ 35    A district court has considerable discretion to determine the relevancy, probative value, and prejudicial impact of evidence. *People v. Cordova*, 293 P.3d 114, 118 (Colo. App. 2011). Relevant evidence is evidence "having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." CRE 401. Even if relevant, evidence may be excluded if its probative value is substantially outweighed by the risk of unfair prejudice, confusion of the issues, or misleading the jury. CRE

17

403. Accordingly, we review a district court's decision to admit or exclude evidence for an abuse of discretion, and we will overturn the decision only if it was arbitrary, unreasonable, or unfair. *People v. James*, 117 P.3d 91, 94 (Colo. App. 2004).

¶ 36 An erroneous evidentiary ruling may rise to the level of a constitutional error if it deprived the defendant of a meaningful opportunity to present a complete defense. *People v. Conyac*, 2014 COA 8M, ¶ 93; *see Krutsinger v. People*, 219 P.3d 1054, 1061 (Colo. 2009). But the right to present a defense "is violated only where the defendant was denied virtually his only means of effectively testing significant prosecution evidence." *Conyac*, ¶ 93.

## C. Analysis

¶ 37 We conclude that the district court neither abused its discretion nor violated Spain's constitutional right to present a defense by excluding the toxicology report indicating the victim had methamphetamine in his system.

¶ 38 First, as the prosecutor argued and the district court found, no experts were endorsed to testify about methamphetamine or its effects. Consequently, no witness could explain how methamphetamine affects users generally, interpret the

concentration of methamphetamine in the victim's system, determine whether the victim was under the influence, or assess whether that amount of methamphetamine in the victim's body could have triggered violent or aggressive behavior.  The district court therefore acted within its discretion by excluding the report. *Delaney*, 620 P.2d at 45-46; *see also State v. Jennings*, 502 P.3d 1255, 1260 (Wash. 2022) (holding that the trial court did not abuse its discretion by excluding the victim's toxicology report in a self-defense case because "reasonable minds might differ" as to the relevance of the report when the defendant "offered no witness to testify as to the potential effects on the victim or that he had previously observed the victim under the influence of methamphetamine").

¶ 39      Still, citing medical journals and media sources, Spain argues that expert testimony was unnecessary because the connection between methamphetamine and violent behavior is "common knowledge."  We disagree that the behavioral effect of 440 nanograms of methamphetamine on the victim is within the common knowledge of a lay person.  Further, the significance of the toxicology report is a matter of specialized scientific knowledge that

exceeds whatever common knowledge the jury may have regarding the general effects of methamphetamine. *See* CRE 702. Accordingly, the toxicology report was not admissible without expert testimony.

¶ 40      Spain's reliance on *People v. Dunham*, 2016 COA 73, ¶ 38, is misplaced. In *Dunham*, an attempted murder case in which the victim testified, the division found it was error to prevent cross-examination about the victim's methamphetamine use on the night of the shooting because it directly related to his credibility. *See id.* at ¶ 40 ("Many courts have recognized that evidence a witness was under the influence of drugs at the time of the events about which the witness testified bears directly on the witness's credibility because drug use may affect a person's ability to perceive accurately."). Here, in contrast, the victim could not testify, so the reasoning in *Dunham* does not apply.

¶ 41      Second, no witnesses — including Spain — testified about their observations of the victim on the night of the shooting. Without any evidence of the victim's behavior during the relevant time period, admitting the toxicology results would have only confused the jury and invited speculation. *See* CRE 403. The

district court therefore acted within its discretion by excluding this evidence. *See Gill v. State*, 765 S.E.2d 925, 927 (Ga. 2014) (upholding exclusion of toxicology evidence in a self-defense case because the defendant made no showing as to "how any drugs that were allegedly in [the victim's] system may have been affecting his behavior at the time of his fatal encounter with [the defendant]"); *Lawrence v. State*, 2015 WY 97, ¶ 19 (upholding exclusion of toxicology evidence in a self-defense case because there was no evidence the defendant was aware of the victim's intoxication).

¶ 42    The toxicology evidence was also irrelevant to the forensic pathologist's determination of the victim's cause of death. The pathologist concluded that the victim died of gunshot wounds to the torso and ruled the death a homicide. Nothing in the autopsy report or the pathologist's testimony suggested any doubt about the cause of death. The evidence established that the victim died as a result of gunshot wounds, not methamphetamine intoxication. Thus, defense counsel did not have the right to cross-examine any witness about whether the victim's death was due to methamphetamine intoxication. *See People v. Scearce*, 87 P.3d 228, 233 (Colo. App. 2003) (noting that "the right to present a defense

21

does not guarantee a defendant a right to question witnesses in violation of the rules of evidence"); *People v. Saiz*, 32 P.3d 441, 449 (Colo. 2001) (While constitutional rights "inform and shape the limits of a trial court's discretion to control cross-examination and exclude evidence offered by a criminal defendant, they do not eliminate that discretion or guarantee that a defendant be permitted to present all the evidence he wishes or do so in the manner he chooses.").

¶ 43   Finally, the district court did not violate Spain's constitutional right to present a defense because he was able to subject the prosecution's case to meaningful adversarial testing.  *See, e.g.*, *Krutsinger*, 219 P.3d at 1062 ("[T]he standard or test for assessing whether a defendant's right to confront or present a defense has been violated by evidentiary rulings is clearly dependent upon the extent to which he was permitted to subject the prosecutor's case to 'meaningful adversarial testing.'" (quoting *Crane v. Kentucky*, 476 U.S. 683, 691 (1986))).

¶ 44   The defense mounted a self-defense case by presenting evidence that the victim was holding a large, sharp, serrated hunting knife when Spain shot him and by extensively

cross-examining Spain's cellmate, who testified for the prosecution. Spain does not argue that he was deprived of the opportunity to present a defense; he merely claims that the jury "very likely would have given stronger consideration to [his] self-defense claim had it been aware of the methamphetamine evidence." The district court therefore did not deny Spain a meaningful opportunity to present a defense.

## IV. Disposition

¶ 45    We affirm the judgment.

JUDGE LIPINSKY and JUDGE SCHUTZ concur.